THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL E. NICKLAUS, Defendant-Appellant.

Second District   No. 2—85—0646

Opinion filed September 26, 1986.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel, of State Appellate Defender's Office, of Springfield, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor's Office, of Springfield, and William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of Elgin, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

Following a plea of guilty to the offenses of murder and unlawful use of weapons, defendant was sentenced to concurrent terms of 60 and 5 years' imprisonment. This is a direct appeal from the denial of a motion to vacate the plea and sentences. No questions are raised concerning the pleadings.

On November 29, 1984, Daniel Nicklaus was charged by information with the offenses of murder and unlawful use of weapons. It was charged that on November 16, 1984, defendant shot and killed Joseph R. Mashaw and, having previously been convicted of a felony, was in possession of a 16-gauge shotgun. That same day, defendant's appointed counsel moved for the appointment of an expert to examine defendant as to his competency to stand trial and his mental state at the time of the alleged offenses. On December 3, 1984, Dr. Donald

Pearson, a psychologist, was appointed to examine the defendant to determine his fitness to stand trial.

On February 22, 1985, defendant entered pleas of guilty to the charges of murder and unlawful use of a weapon. The court admonished defendant regarding the nature of these charges and the possible penalties, and he informed the court that his plea was not made due to any threats or promises. It was stipulated that on November 16, 1984, defendant went to the home of Joseph Mashaw carrying a shotgun. When Mashaw arrived a few minutes later, the defendant pointed a shotgun at him, called to him, and then fired point blank into his head. The defendant then told a police officer that he had decided to kill Mashaw because some years earlier Mashaw had "ratted" to the police concerning the defendant's burglary of a beer distributorship. Mashaw died as a result of the gunshot. It was further stipulated that defendant had been convicted of burglary in 1982. The trial court accepted the pleas of guilty and set sentencing for April 11, 1985.

The sentencing hearing began on April 18, 1985. The State called Dr. Donald Pearson, the court-appointed psychologist, as a witness in aggravation. The defense objected to Dr. Pearson being allowed to testify to any statements made by the defendant in the course of his competency examinations. The objection was overruled. Dr. Pearson testified that based on his examination of defendant he formed an opinion that the defendant's criminal conduct was likely to recur; defendant was a sociopathic personality with a slim likelihood of rehabilitation; that he had little regard for human life; and that he would be loyal and protective to persons "closest to his value structure" and his personal needs.

On cross-examination Dr. Pearson stated that the opinions he expressed were based upon the court-ordered examination of the defendant, and he acknowledged that it was possible defendant could be rehabilitated.

A second witness in aggravation, Ann Fitzhenry, testified that she was a newspaper reporter who had received communications from a person purporting to be the defendant who claimed to have killed Joseph Mashaw for the purpose of revenge. He had stated that he would kill again if released from prison.

Several witnesses testified for the State that while defendant was incarcerated, he had made phone calls and had written letters to Ann Fitzhenry. Witnesses also related that defendant had drawn a picture of a person being shot and had laughed about it. He had also made statements that when he "broke out of Joliet *** he would kill

again."

The defense called witnesses on behalf of defendant. Bob Nicklaus, the defendant's brother, testified that the deceased, Joe Mashaw, and the defendant had been friends until Joe had told the police about the burglary of a beer warehouse. Defendant's mother, Roberta, testified to her hope that her son would get help, and her feeling that he could be rehabilitated. William Wolf, an officer with the Salvation Army, testified that he had counseled defendant in the Stephenson County jail and that the defendant had expressed remorse for what he had done. Defendant told Wolf that he would not kill again except in self-defense, but that this situation was something he had been forced into. Wolf expressed a belief that defendant could be rehabilitated.

On April 24, 1985, the trial court, after announcing its finding that the murder had been accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty, sentenced defendant to an extended term of 80 years' imprisonment for that offense. The court imposed a consecutive term of 10 years' imprisonment for the offense of unlawful use of weapons.

On May 15, 1985, the defendant filed a motion to withdraw the plea of guilty and vacate judgment. This motion alleged in part that the trial court had erred in imposing consecutive sentences and an extended term for unlawful use of weapons. It was also alleged that the court had erred in allowing the State to present testimony of Dr. Pearson in violation of the Illinois statutes concerning patient-therapist privilege. An amended motion to withdraw the plea and vacate judgment containing the same grounds was filed on July 12, 1985. After hearing arguments on the motions on July 23, 1985, the trial court resentenced defendant to a term of 60 years for murder and a concurrent term of 5 years for unlawful use of weapons.

Notice of appeal was filed on August 12, 1985.

Defendant argues that the use of the competency testimony by the court-appointed psychologist during his sentencing hearing was reversible error. He relies on section 104—14(a) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1983, ch. 38, par. 104—14(a)), and *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866.

The State responds by first arguing that there is no case directly on point in Illinois which prohibits the use of such information at a sentencing hearing. They note that, in a sentencing hearing, the defendant must show an abuse of discretion or the sentence will not be altered on review. In any event, the statute should be inapplicable

because it only applies to a hearing on the question of guilt and does not apply to sentencing hearings. The State next argues that the legislative intent of section 104—14(a) of the Code was only to preserve the rights of the defendant where the psychiatric examination was compulsory and requested by the court or the State. They contend it does not apply to situations where the defendant requested the examination.

The United States Supreme Court, in *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866, was confronted with a similar situation, but without a statute. A defendant had requested, and was granted, an examination to determine whether he was competent to stand trial. The psychiatrist who conducted the examination did not advise the defendant before the examination that he had a right to remain silent and that any statement he made could be used against him at a sentencing hearing. The State's arguments in that case were similar to the arguments the State makes here. The Supreme Court held that the availability of the fifth amendment privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or the admission and the exposure which it invites. The court further could discern no basis to distinguish between the guilt and penalty phases of the respondent's capital murder trial so far as the protection of the fifth amendment privilege is concerned. Given the gravity of the decision to be made at the penalty phase, the State was not relieved of the obligation to observe fundamental constitutional guarantees. (451 U.S. 454, 463, 68 L. Ed. 2d 359, 369, 101 S. Ct. 1866, 1873.) The Supreme Court stated:

> "Respondent, however, introduced no psychiatric evidence, nor had he indicated that he might do so. Instead, the State offered information obtained from the court-ordered competency examination as affirmative evidence to persuade the jury to return a sentence of death. Respondent's future dangerousness was a critical issue at the sentencing hearing, and one on which the State had the burden of proof beyond a reasonable doubt. [Citation.] To meet its burden, the State used respondent's own statements, unwittingly made without an awareness that he was assisting the State's efforts to obtain the death penalty."
> *Estelle v. Smith* (1981), 451 U.S. 454, 466, 68 L. Ed. 2d 359, 371, 101 S. Ct. 1866, 1874-75.

In the instant case, the State specifically argued that the purpose of the testimony was to show his inability to be rehabilitated and the likelihood that he would commit future crimes. The violation of the

statute in Illinois is similar to the due process problem in *Estelle*. Section 104—14(a) of the Code provides that such reports "shall be admissible only on the issue of whether he was insane, drugged, or intoxicated" and only when he "raises the defense of insanity or the defense of a drugged or intoxicated condition." (Ill. Rev. Stat. 1983, ch. 38, par. 104—14(a).) We have not found any case in the State of Illinois which is directly on point. Two cases have recently been decided which raised the statute. These involved two defendants, Roland Kashney and David Lee, and were consolidated by the supreme court in *People v. Kashney* (1986), 111 Ill. 2d 454.

Kashney's defense counsel petitioned for, and the court granted, a psychiatric evaluation of the defendant. On the basis of that report, Kashney was found unfit to stand trial; he was remanded to the Department of Mental Health until he should become fit. (*People v. Kashney* (1986), 111 Ill. 2d 454, 460.) He was later found fit and testified in his own behalf. He called two psychiatrists who testified that he had been mentally ill for a considerable period of time, but they gave no opinion as to his sanity or insanity at the time of the offenses. He also called two expert witnesses in demonology. The State, in response, introduced testimony of the psychiatrist who conducted the competency examination.

Defendant Lee had been charged with rape and was told that he had been identified; he was falsely advised that his fingerprints were found in the apartment. (*People v. Kashney* (1986), 111 Ill. 2d 454, 461-66.) During the pretrial phase of the proceedings, the defendant indicated that he might rely on the affirmative defense of insanity. The trial court then ordered a psychiatric examination to determine his fitness to stand trial. At trial, over defendant's objection, the State called the pretrial, court-appointed psychiatrist. The prosecutor elicited from him an opinion based on the information he had received during his examination. The State argued that since Lee raised an affirmative defense of insanity, introducing testimony of a post-traumatic stress syndrome, it had a right under the statute to impeach the defendant with his prior inconsistent statement.

Our supreme court held "[s]ection 104—14(a) expressly provides for only one use of a defendant's statement made during a court-ordered fitness examination. A defendant's statement can be utilized by the State, but their use is limited to rebutting the affirmative defense of insanity." (*People v. Kashney* (1986), 111 Ill. 2d 454, 464.) In both cases, the supreme court went on to find that the issue of insanity was in fact raised by the defendants and that the use of the statements was not a violation of the statute.

We think it is clear, from the United States Supreme Court's language in *Estelle* and from the Illinois Supreme Court's language in *Kashney*, that it was error for the trial judge to have permitted the introduction of the psychiatric examination of the defendant where insanity was not in issue. Further, the purpose of the statute was to provide assurance to defendants in criminal cases that competency examinations and the information derived therefrom could not be used except when insanity was an issue. This blanket protection will encourage a free interchange of conversation, information and ideas between the examining psychiatric physician and the defendant to determine his mental status. Should this information be available for use in the even more important sentencing phase, it would remove the very assurances which the statute purports to grant. A defense counsel would not be performing his function to pursue such an examination knowing that the results might be used to his client's prejudice at the close of the case. It was just this protection that the United States Supreme Court was concerned with in *Estelle*. (See *Estelle v. Smith* (1981), 451 U.S. 454, 466, 68 L. Ed. 2d 359, 371, 101 S. Ct. 1866, 1874-75.) Here, if the State wanted evidence of the defendant's mental status to be provided to the trial judge, it could have procured such information utilizing other statutorily approved methods. See Ill. Rev. Stat. 1983, ch. 38, pars. 1005—3—2, 1005—3—3.

The positive opinion of the psychologist was so clear that the defendant had little regard for human life, would probably commit future similar criminal acts, could not be rehabilitated, and that present known drugs or other treatment methods would not cure his mental state, that the defendant's rights were prejudiced at the sentencing hearing.

Accordingly, we reverse the sentence and remand for a new sentencing hearing and disposition.

Reversed and remanded.

REINHARD and HOPF, JJ., concur.