2018 IL App (4th) 150759

NO. 4-15-0759

FILED
March 20, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County |
| | ) | No. 15CF407 |
| v. | ) | |
| CHAD Z. WILLIAMS, | ) | Honorable |
| | ) | Thomas J. Difanis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Holder White and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial in May 2015, the trial court found defendant, Chad Z.

Williams, guilty of disorderly conduct and criminal trespass to real property. In June 2015, the

court sentenced him to 68 months in prison for disorderly conduct and imposed costs of $222 for

criminal trespass to real property.

¶ 2    On appeal, defendant argues he was denied his right to a fair sentencing hearing

because the trial court improperly considered the written report of defendant's fitness

examination in sentencing him. We affirm in part, vacate in part, and remand with directions.

¶ 3                        I. BACKGROUND

¶ 4    On March 24, 2015, the State charged defendant by information with disorderly

conduct (count I) (720 ILCS 5/26-1(a)(2) (West 2014)) and criminal trespass to real property

(count II) (720 ILCS 5/21-3(a)(2) (West 2014)). Count I alleged defendant knowingly caused to

be transmitted to the Urbana Fire Department a false alarm of fire, knowing at the time of such transmission there were no reasonable grounds to believe a fire existed. Count II alleged defendant knowingly entered upon the land of Carle Therapy Services, located in Urbana, Illinois, after receiving, prior to such entry, notice such entry was forbidden.

¶ 5        On March 25, 2015, defendant filed a motion for appointment of a psychiatrist pursuant to section 104-11(b) of Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-11(b) (West 2014)). Defendant sought the appointment of "a qualified expert to examine defendant as to his fitness to stand trial and sanity at the time of the offense alleged." The trial court granted defendant's motion, appointing Dr. Lawrence Jeckel to examine defendant. The court ordered the report as to fitness to stand trial to be provided to the court and the report as to sanity at the time of the alleged offense to be provided to defendant.

¶ 6        In April 2015, Dr. Jeckel filed his 15-page report with the clerk of the circuit court. In a paragraph titled, "Statement of Nonconfidentiality," Dr. Jeckel stated he "explained at the outset to [defendant] that the examination did not constitute a doctor/patient relationship in the usual sense, and that [Dr. Jeckel's] findings and opinions would be included in a report that would be made available to his attorney." Dr. Jeckel further stated defendant understood Dr. Jeckel might be requested to testify in court. Dr. Jeckel stated defendant agreed "to these conditions." Dr. Jeckel reiterated in a paragraph titled "Clinical Evaluation," defendant "understood the exception to confidential[ity] and the requirement that [Dr. Jeckel] report to the Court the results of the fitness examination." Ultimately, Dr. Jeckel found defendant fit to stand trial.

¶ 7        In May 2015, defendant's bench trial commenced. Derrick Odle testified he is a division chief for the Urbana Fire Department. On March 23, 2015, six units responded to a false

alarm of fire from Carle Therapy Services in Urbana. Nathan Pickens testified he is a security officer for Carle Hospital, including Carle Therapy Services. Pickens provided written notice to defendant on July 12, 2014, banning defendant from all Carle properties. Kelly Vaughn testified she is a patient services representative employed by Carle Therapy Services. Defendant entered Carle Therapy Services on March 23, 2015, and approached the front counter. Defendant requested "blind assistance" and an ambulance. Vaughn attempted to determine defendant's needs, but defendant became "very agitated." Vaughn sought assistance from a registered nurse who was also unable to discern defendant's requests and directed a coworker to call 9-1-1. While waiting for emergency responders, Vaughn observed defendant pull the fire alarm, stating "that is for refusing to help a blind man." Vaughn testified defendant did not appear to be blind.

¶ 8        Urbana police officer Shannon Wolfe testified she responded to a 9-1-1 call from Carle Therapy Services on March 23, 2015. She was familiar with defendant. Defendant has never appeared to be blind. Defendant testified he went into Carle Therapy Services on March 23, 2015, "with vision and some other physiological symptom[s]." After waiting for an ambulance for 20 minutes, he pulled the fire alarm. Defendant understood there was no fire. Following defendant's testimony, the trial court found defendant guilty on both counts. Defendant filed a motion for acquittal or, in the alternative, motion for a new trial. The trial court denied the motion.

¶ 9        In June 2015, the trial court conducted the sentencing hearing. In aggravation, the State presented the testimony of Louis Hall. Hall testified he was employed as a security supervisor for Carle Hospital on February 19, 2015. He had encountered defendant on multiple occasions. On February 19, 2015, Hall responded to a fire alarm defendant pulled as he exited the emergency room. Hall confirmed there was no fire "or any emergency of any nature that

would have warranted [defendant] pulling the fire alarm." The State recommended a five-year sentence. Defendant did not present any evidence in mitigation. Defense counsel directed the court's attention to Dr. Jeckel's report, arguing "it clearly states, he—it's very likely he was seriously abused as a child and had to be removed from the home. And basically the child developed PTSD [(posttraumatic stress disorder)], and that manifested itself into conversion disorder." Defense counsel further argued the 26-year-old defendant was not a violent person. Defendant did not speak on his own behalf. Defense counsel asked for "conditional discharge and a period of 180-days in the Champaign County jail."

¶ 10        The trial court noted two statutory factors in aggravation were defendant's "prior criminal history" and deterrence. The court referenced the two occasions in which defendant falsely pulled a fire alarm, February and March 2015. It characterized the false pulling of a fire alarm at a medical facility as "an outrageous crime." The court considered defendant's "history, character, and condition," stating "that's where I get to Dr. Jeckel's report." The court quoted from Dr. Jeckel's report, as follows:

> "[Defendant] continues to engage in malicious mischief toward the police and in
> the community. He frequently acts out infantile, omnipotent demands, such as
> asking staff at Carle Therapy Services to call an ambulance for him. His
> insistence that he is blind, deaf, has PTSD or narcolepsy, is clumsy and may on
> occasion work with unsuspecting clerks. But he really can become a tyrant if a
> clerk asks him to pay, and he has a history of resisting arrest. *** Therefore, I
> believe he should be considered a chronic suicide risk, which is something that we
> have to take into consideration. In my opinion, he is not suitable for treatment in a
> psychiatric facility because he basically engages in ego-syntonic acting out and

has shown no indication of stopping his 'reign of terror.' *** Neuropsychological testing has revealed that he has average intelligence. He may well need to be incarcerated for extended periods because he cannot be controlled in the community."

The court sentenced defendant to an extended term of 68 months in prison for disorderly conduct and imposed costs of $222 for criminal trespass to real property.

¶ 11     Defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 12                          II. ANALYSIS

¶ 13     Defendant argues the trial court denied his right to a fair sentencing hearing when it considered in aggravation Dr. Jeckel's written report of defendant's fitness examination. In support of his position, defendant relies on section 104-14 of the Code (725 ILCS 5/104-14 (West 2014)) and *People v. Nicklaus*, 147 Ill. App. 3d 632, 498 N.E.2d 753 (1986). Defendant also argues the court's consideration of Dr. Jeckel's report at his sentencing hearing infringed upon his fifth amendment privilege against self-incrimination, citing the United States Supreme Court's decision in *Estelle v. Smith*, 451 U.S. 454 (1981).

¶ 14     The State contends defendant forfeited his claim by failing to object to the trial court's consideration of Dr. Jeckel's report at his sentencing hearing. Moreover, defendant did not raise the issue in his motion to reconsider his sentence. The State also contends (1) evidence must only be relevant and reliable to be admissible at a sentencing hearing and (2) the limitation of section 104-14 of the Code (725 ILCS 5/104-14 (West 2014)) should not apply to a sentencing hearing.

¶ 15 The State is correct defendant did not object to the trial court's consideration of Dr. Jeckel's report at his sentencing hearing and in his motion to reconsider his sentence. Accordingly, defendant has forfeited his claim. See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010) (holding "that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). However, defendant asks this court to review his contentions under the plain-error doctrine (Ill. S. Ct. R. 615(a)).

¶ 16 "[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010). Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. As the first step in the analysis, we must determine whether any error occurred at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272.

¶ 17 The ordinary rules of evidence governing a trial are relaxed at the sentencing hearing. *People v. Blanck*, 263 Ill. App. 3d 224, 234, 635 N.E.2d 1356, 1364 (1994). Moreover, "a sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature." *People v. Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992). At the sentencing hearing, evidence is admissible if it is relevant and reliable. *Williams*, 149 Ill. 2d at 490.

¶ 18    The question of whether the trial court relied on an improper factor in imposing the defendant's sentence presents a question of law, which we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. The defendant has the burden "to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943, 904 N.E.2d 1022, 1028 (2009).

¶ 19    "The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51, 21 N.E.3d 695. Our legislature has enacted a detailed statutory scheme, found in article 104 of the Code (725 ILCS 5/104-10 to 104-31 (West 2014)), to ensure this prohibition is honored. Article 104 is titled "Fitness for trial, to plead or to be sentenced" and, thus, clearly encompasses sentencing proceedings. At issue in this case is section 104-14 of the Code, "Use of Statements Made During Examination or Treatment." Section 104-14 states, in relevant part:

> "(a) Statements made by the defendant and information gathered in the course of any examination or treatment ordered under Section 104-13, 104-17 or 104-20 shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged or intoxicated condition, in which case they shall be admissible only on the issue of whether he was insane, drugged, or intoxicated. ***
>
> (b) Except as provided in paragraph (a) of this Section, no statement made by the defendant in the course of any examination or treatment ordered under

Section 104-13, 104-17 or 104-20 which relates to the crime charged or to other criminal acts shall be disclosed by persons conducting the examination or the treatment, except to members of the examining or treating team, without the informed written consent of the defendant, who is competent at the time of giving such consent.

(c) The court shall advise the defendant of the limitations on the use of any statements made or information gathered in the course of the fitness examination or subsequent treatment as provided in this Section. It shall also advise him that he may refuse to cooperate with the person conducting the examination, but that his refusal may be admissible into evidence on the issue of his mental or physical condition." 725 ILCS 5/104-14 (West 2014).

¶ 20    In this case, defendant sought the appointment of "a qualified expert to examine defendant as to his fitness to stand trial and sanity at the time of the offense alleged," pursuant to section 104-11(b) of the Code (725 ILCS 5/104-11(b) (West 2014)). Dr. Jeckel examined defendant and filed his report with the clerk of the circuit court. See 725 ILCS 5/104-15 (West 2014) ("The person *** conducting an examination of the defendant *** shall submit a written report to the court *** within 30 days of the date of the order."). Defendant had contact with Dr. Jeckel solely for the purpose of determining his fitness and sanity as these issues related to the criminal charges pending against him and as these issues related to his defense to those criminal charges. Therefore, the statements made by defendant to Dr. Jeckel, and information gathered by Dr. Jeckel in the course of the examination, fell within the terms of section 104-14 of the Code (725 ILCS 5/104-14 (West 2014)). Because defendant did not raise the defense of insanity or drugged or intoxicated condition, any statements defendant made and information gathered in the

course of the examination are barred by the exclusionary language of section 104-14 of the Code (725 ILCS 5/104-14 (West 2014)).

¶ 21     Nevertheless, the trial court considered in aggravation Dr. Jeckel's written report of defendant's fitness examination when sentencing defendant. The court read from pages 14 and 15 of Dr. Jeckel's report, characterizing defendant's behavior as "malicious mischief" and "ego-syntonic acting out." The court noted defendant was "not suitable for treatment" as he showed no signs of "stopping his reign of terror." Finally, the court read aloud Dr. Jeckel's statement, "[Defendant] may well need to be incarcerated for extended periods because he cannot be controlled in the community." The court noted Dr. Jeckel's statement "[spoke] volumes as to [defendant] and his criminal activity in the community." The court sentenced defendant to an extended term of 68 months in prison for disorderly conduct, where the maximum extended-term sentence was six years in prison. See 730 ILCS 5/5-4.5-45(a) (West 2014) (maximum extended-term sentence for a Class 4 felony is six years in prison).

¶ 22     Here, the trial court improperly considered in aggravation Dr. Jeckel's written report of defendant's fitness examination. Although defendant did not object to the court's consideration of Dr. Jeckel's report at his sentencing hearing and in his motion to reconsider his sentence, consideration of the report denied defendant his right to a fair sentencing hearing and, thus, constituted second-prong plain error.

¶ 23     Similarly, in *Nicklaus*, the Second District had occasion to interpret section 104-14(a). In *Nicklaus*, the appellate court held a psychologist who had been appointed to examine the defendant to determine his fitness to stand trial should not have been permitted to testify at the sentencing hearing concerning statements made by the defendant in the course of competency examinations where the defendant had never raised an insanity defense. *Nicklaus*,

147 Ill. App. 3d at 637. The *Nicklaus* court held that the admission of such testimony, which included opinions the defendant had little regard for human life and would probably commit future criminal acts, was reversible error. *Nicklaus*, 147 Ill. App. 3d at 637.

¶ 24 "A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21, 896 N.E.2d 239, 251 (2008). In this case, we cannot be certain how much weight the trial court accorded Dr. Jeckel's report. Thus, we vacate defendant's sentences and remand for a new sentencing hearing.

¶ 25 In view of this result, reached under section 104-14 of the Code (725 ILCS 5/104-14 (West 2014)), we need not address defendant's fifth amendment claim. See *People v. Lee*, 214 Ill. 2d 476, 482, 828 N.E.2d 237, 243 (2005) ("This court will not consider a constitutional question if the case can be decided on other grounds.").

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we affirm defendant's convictions, vacate his sentences, and remand for a new sentencing hearing before a different judge.

¶ 28 Affirmed in part and vacated in part; cause remanded with directions.