2020 IL App (1st) 180731-U

No. 1-18-0731

Order filed September 29, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 16884 |
| | ) | |
| JOHN HENDERSHOTT, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for five counts of aggravated criminal sexual abuse and sentence over his contention that the trial court relied on an improper sentencing factor.

¶ 2    Following a 2017 jury trial, defendant John Hendershott was found guilty of five counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2014)) and sentenced to an aggregate term of 14 years' imprisonment. On appeal, defendant contends that the trial court

sentenced him based on an improper aggravating factor, such that he is entitled to resentencing before a different judge. For the following reasons, we affirm.

¶ 3    In July 2015, defendant, who is HIV-positive, had a sexual encounter with J.Z., a 14-year-old boy. Defendant was charged by indictment with five counts of aggravated criminal sexual abuse, premised on five different acts during the same encounter: contact between defendant's penis and J.Z.'s mouth (count 1); contact between defendant's penis and J.Z.'s anus (count 2); contact between defendant's mouth and J.Z.'s penis (count 3); contact between defendant's mouth and J.Z.'s anus (count 4); and defendant inserting his finger into J.Z.'s anus (count 5). Defendant was also charged with individual counts of indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2014), traveling to meet a child (720 ILCS 5/11-26 (West 2014)), solicitation to meet a child (720 ILCS 5/11-6.6(a) (West 2014), harmful material (720 ILCS 5/11-21(g) (West 2014), grooming (720 ILCS 5/11-25) (West 2014)), and luring of a minor (720 ILCS 5/10-5.1(a) (West 2014)). Trial proceeded solely on the five counts of aggravated criminal sexual abuse.[1]

¶ 4    Before trial, the State filed a "Motion to Allow Other Crimes Evidence" pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2014)). In that motion, the State argued that defendant's failure to disclose his HIV status to J.Z. was relevant to the issues of motive, lack of consent, intent, and propensity to commit sex offenses. Defendant filed a response asserting that his HIV status was irrelevant, and that its probative value was outweighed by its prejudicial impact. The court initially granted the State's motion and denied

---

[1] The record does not show that the State formally nol-prossed the other counts. However, the record reflects that the jury received instructions and verdict forms only for the counts of aggravated sexual abuse and not for the other charged offenses.

defendant's motion to reconsider. However, following jury selection, the trial court *sua sponte* reconsidered its ruling and barred the State from introducing evidence of defendant's HIV status.

¶ 5     At trial, J.Z. testified that as of July 2015, he was 14 years old.  His parents were divorced, and he spent every other weekend at his father's home. J.Z. had access to an iPod device that his father did not monitor.  In June 2015, J.Z. joined an online dating website called Scruff in order to talk to men. When J.Z. created his online account, he entered a false birthdate to indicate that he was 18 years old. J.Z.'s age was not displayed to other members of the website. J.Z. identified the photograph that he used as his profile picture.

¶ 6     J.Z. initiated communications with defendant, whose online profile indicated that he was over 50 years old. J.Z. and defendant engaged in a number of sexually explicit chat conversations.

¶ 7     On the morning of July 19, 2015, J.Z. and defendant arranged to meet near J.Z.'s father's home. They subsequently walked to defendant's house and engaged in sexual activity. Defendant put his mouth on J.Z.'s penis and then put his tongue in J.Z.'s anus. Defendant touched J.Z.'s anus with his finger, and inserted his penis into J.Z.'s anus. Defendant did not wear a condom during the encounter.

¶ 8     That evening, J.Z. returned to his mother's house. He told her about the encounter with defendant, and she contacted police. J.Z. was taken to a hospital, where he was photographed. J.Z. was later interviewed at the Children's Advocacy Center. He later identified defendant in a photo array.

¶ 9     On cross-examination, J.Z. admitted that that he did not tell defendant that he was 14 years old. He agreed that defendant did not physically force him to have sex, and that J.Z. "enjoyed" the

encounter. On redirect examination, J.Z. acknowledged that, shortly after he met defendant in person, he said that he had been in the 6th grade three years earlier.

¶ 10    Detective Charles Hollendoner testified that he conducted an interview with defendant after his arrest. During the interview, defendant acknowledged that he thought J.Z. looked "young" and that he believed he was 16 or 17 years old. Defendant admitted that they had oral sex and anal sex, and that he digitally penetrated J.Z.'s anus. Defendant was interviewed three times, and the last interview was video recorded. Excerpts from the recorded interview were published to the jury.

¶ 11    The jury found defendant guilty of all five counts of aggravated criminal sexual abuse. Defendant's motion for a new trial was denied.

¶ 12    The presentence investigation report (PSI) reflected that defendant was born in July 1963. His criminal record consisted only of a traffic offense in 1998 and a "DUI/Alcohol" offense in 2005. The PSI noted that defendant had been taking medication for a "serious medical condition" for 25 years.

¶ 13    The court conducted a sentencing hearing on March 8, 2018. The State presented a victim impact statement from D.Z., J.Z.'s mother. She stated that, when J.Z. was treated at a hospital, it was "recommended as a precaution that [J.Z.] be put on an STD prep medication that would help fight against exposure to the STD." The drug had side effects, and J.Z. "became very sick and lost six pounds."

¶ 14    D.Z. also stated:

> "When the detectives arrested [defendant] he disclosed that he tested positive for an STD and had been for 20 years. While we were relieved that my son had taken the STD prep medication within the first month of the assault, this revelation meant

that my son would have to test negative for the STD at numerous intervals for over a year to be out of the woods and officially STD free."

¶ 15    D.Z. further stated that her relationship with her fiancé "collapsed" after the incident. She and her children moved to a new residence because she could not "afford anything within their school district with the mounting bills from doctors, therapists, lawyers, and medication." D.Z. further stated that the incident "brought back the pain" from her own experience with sexual abuse. She was diagnosed with post-traumatic syndrome disorder and could not return to work. D.Z. also stated that J.Z. experienced "alienation" and "emotional abuse" from his father after the incident.

¶ 16    J.Z.'s impact statement related that his family underwent counseling therapy for trauma. The incident with defendant created a rift between J.Z. and his father, who did not accept J.Z. and told him that he was at fault. The incident caused "major stress" in J.Z.'s relationship with his mother, and they were both "changed forever."

¶ 17    After the court read the victim impact statements, the court asked the State's attorney to confirm that defendant was HIV positive at the time of the incident. The State's attorney confirmed that defendant acknowledged his HIV status in his recorded interview.

¶ 18    In aggravation, the State emphasized that defendant failed to reveal his HIV status and had sex with J.Z. without a condom, which posed "safety risks and life-threatening possibilities." The State further argued that defendant knew J.Z. was a child and that a strict sentence was needed to "deter other people from putting children at risk." The State requested that the court exercise its discretion to impose consecutive sentences pursuant to section 5-8-4(c) of the Unified Code of Corrections. 730 ILCS 5/5-8-4 (West 2016). The State argued that although concurrent sentencing could be appropriate "for somebody who wasn't HIV positive," in this case defendant "put this

child in a life-threatening situation." The State further argued that consecutive sentencing was necessary to protect the public because defendant's conduct was that of "somebody who is likely to re-offend."

¶ 19 In mitigation, defense counsel argued that the sexual encounter was "consensual," there was "no force" used, and that defendant did not contemplate that his conduct threatened serious physical harm. Defense counsel noted that defendant had no prior history of abusing children or other sexual misconduct. Counsel acknowledged his 2005 DUI but emphasized he had no other criminal cases for the next 10 years. Counsel argued that defendant understood his mistake and was unlikely to commit another crime.

¶ 20 In allocution, defendant stated he was "devastated by what has gone on with [J.Z.] and his mother" and that he had "no intention" of doing harm. Defendant maintained that he did not know J.Z. was underage, and that it "never would have happened" had he known. He noted that the dating website was for adults and that J.Z "came across as an adult" in their conversations. Defendant acknowledged that J.Z. appeared to be young and that it was a mistake not to ask his age. Defendant expressed remorse and said that "[t]here's not going to be anything like this ever again that happens to me in my life."

¶ 21 Before announcing sentence, the court recognized that all five offenses were class 2 felonies, punishable by three to seven years' imprisonment. The court remarked that when J.Z. appeared in court at trial, "everyone in the room knew he was under the age of 17 then and that was two years after" the July 2015 incident. The court found there was "no question" that defendant knew J.Z. was younger than 17. The court acknowledged that J.Z. may have expressed

a desire to have sex, but that there was no legal excuse for defendant to have sexual contact with a person that young.

¶ 22   The court discussed defendant's HIV status at length, including the following:

"So this crime, in my estimation, is compounded by the extraordinarily aggravating circumstance that you had a condition of human immunodeficiency virus * * * and that is often a precursor for what is generally viewed to be the fatal disease of AIDS, acquired immune deficiency syndrome * * *.

Now, happily * * * we all happen to live in an age at present where pharmacology and treatment and society's desire to defend against these pernicious diseases are such that these drugs are made available and when people find that they are HIV positive, they can engage in a regimen that maintains their health and prohibits it – at least prevents it for an appreciable period of time from deteriorating, a very substantial period of time. And it may well be that this pharmacology, this drug regimen, often prevents partners from becoming infected * * *. But there's no guarantee in that regard. That's why when it was discovered that you had this condition this child and his family and their medical care providers were required to engage in a particularly extreme pharmacology regimen in order to forfend against this child from becoming infected in that regard.

Now, it may well be that somebody in this day and age, because of these pharmacological advances, might be confident that they are not going to infect someone. They might be personally confident that the manner in which they conduct themselves when engaged in sexual activity is such that they won't infect

somebody, but how anyone can possibly think that they can guarantee that is beyond me. And how anyone could conduct themselves in such a manner with an unknowing partner who happens to have been 14 years old is aggravating to the extreme."

¶ 23    The court subsequently stated:

"So this young child and his family, his mother and father, were required to trust that no one would seek to do this to him and to expose him to the potentiality that he could be infected, a potentiality that doesn't go away on the day you get these drugs. A potentiality that for all I know and, frankly, for all pharmacology knows and science and medical people know, isn't necessarily sure won't lead to deleterious events or deleterious results years later for all I know. So to engage in that conduct with an unknowing partner who's 14 years of age is, in my estimation, extraordinarily aggravating."

¶ 24    The court proceeded to impose the maximum term of seven years' imprisonment on each of counts 1 through 5. The court further determined that the sentences on counts 1 and 2 would run consecutively because it was "necessary to protect the public from further conduct by the defendant of such a type as is the case here because of the cavalier dismissive manner which [defendant] used this child." The sentences on counts 3, 4 and 5 would run concurrent with count 1, resulting in an aggregate sentence of 14 years' imprisonment.

¶ 25    In moving to reconsider the sentence, defense counsel remarked that since the court imposed the maximum sentence, it found "no mitigating circumstances whatsoever." The court responded: "I did not make any such conclusion. I fully appreciated the mitigating circumstances

that were presented. It's just that the mitigating circumstances pale in comparison to the aggravating circumstances that I pointed out during my ruling." The court denied the motion to reconsider sentence, and defendant filed a timely notice of appeal.

¶ 26 On appeal, defendant asserts a single claim of error with respect to sentencing, premised upon comments by the trial court regarding his HIV status. According to defendant, the trial court "relied on its personal and erroneous belief about the potential for J.Z., who tested negative prior to the sentencing hearing, to develop [HIV] sometime in the future as a result of his sexual contact with [defendant.]" Defendant claims that imposition of the maximum sentence "depended on the court's improper belief that [defendant's] HIV status posed a continuing threat to J.Z."

¶ 27 Defendant relies on the court's comments at sentencing, in which it referenced the "potentiality that [J.Z.] could be infected" from his encounter with defendant. He emphasizes that the court referred to this as a "potentiality that for all I know and, frankly, for all pharmacology knows and science and medical people know, isn't necessarily sure won't lead to deleterious events or deleterious results years later for all I know." Defendant interprets this comment as indicating the trial court's belief, unsupported by the record, that J.Z. "could develop HIV years after having sex with [defendant]." Although defendant concedes that his HIV status may have been a "legitimate aggravating sentencing factor," he claims the trial court "invented an imagined aggravating factor" to impose the maximum possible sentence. On that basis, he requests resentencing before a different judge.

¶ 28 In setting forth this argument, defendant acknowledges that he forfeited this claim by not making a contemporaneous objection at sentencing or including this issue in his motion to reconsider sentence. See *People v. Hillier*, 237 Ill.2d 539, 545 (2010) (to preserve a claim of

sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required). However, he asserts that forfeiture should be relaxed because the basis for the objection is the trial judge's conduct. See *People v. Wardell*, 230 Ill. App. 3d 1093, 1102 (1992) (noting "[t]he waiver rule * * * is less rigidly applied when the basis for the objection is the trial judge's conduct"). He otherwise suggests that we review the issue under the plain-error doctrine, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 29    To obtain relief under the plain-error doctrine, "a defendant must first show that a clear or obvious error occurred. [Citation.] In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. [Citation.]" *Hillier*, 237 Ill. 2d at 545. Defendant argues that his claim is reviewable under either prong of the plain-error doctrine. However, the first step in our plain-error analysis is to determine whether any error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 30    We note the precise nature of defendant's challenge to his sentence. Defendant does not contend that the trial court abused its discretion in the course of weighing relevant sentencing factors. Instead, he claims the court relied on an improper, non-existent sentencing factor; namely, that J.Z. faced an ongoing risk of HIV infection from his encounter with defendant.

¶ 31    "We review a sentence that falls within statutory limits for an abuse of discretion. [Citation.] However, when a trial court considers an improper factor in aggravation, the trial court abuses its discretion. [Citation.]" *People v. Minter*, 2015 IL App (1st) 120958, ¶ 147. "Where a

trial court considers an improper factor in aggravation, we must order resentencing if we cannot determine the weight that the trial court gave to the aggravating factor." *Id.* ¶ 152.

¶ 32    The issue of whether the trial court considered an improper factor in imposing sentence presents a question of law, which we review *de novo. People v. Williams*, 2018 IL App (4th) 150759, ¶ 18 (citing *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8). "It is the defendant's burden to affirmatively establish that the sentence was based on improper considerations [citation], and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improperly imposed [citation.]" *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 33    Furthermore, in deciding whether the trial court applied an improper factor, there is a "strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." (Internal quotation marks omitted.) *Williams*, 2018 IL App (4th) 150759, ¶ 18. In undertaking our analysis, this court "consider[s] the record as a whole" and "will not focus on isolated statements" in determining whether sentence was improperly imposed. *Bowen*, 2015 IL App (1st) 132046, ¶ 50.

¶ 34    In this case, defendant's argument depends upon the interpretation of the trial court's following remarks:

> "So this young child and his family * * * were required to trust that no one would seek to do this to him and to expose him to the potentiality that he could be infected, a potentiality that doesn't go away on the day you get these drugs. A potentiality that for all I know and, frankly, for all pharmacology knows and science and medical people know, isn't necessarily sure won't lead to deleterious events or

deleterious results years later for all I know. So to engage in that conduct with an unknowing partner who's 14 years of age is, in my estimation, extraordinarily aggravating."

¶ 35    Defendant posits that these remarks indicate the court's belief that, at the time of sentencing in March 2018, J.Z. was still at risk of contracting HIV from his contact with defendant. Defendant claims that the court applied this "continuing" risk of HIV infection as an aggravating factor to impose the maximum sentence, despite the lack of evidence suggesting that J.Z. was still at risk of infection from the July 2015 encounter. Thus, defendant argues that the court considered an unsubstantiated non-existent aggravating factor.

¶ 36    After reviewing the court's remarks in context of its other comments at sentencing, and keeping in mind the presumption that the court based its sentence on proper legal reasoning, we find the court's remarks were not improper. Specifically, we do not believe that the court's remarks regarding the "potentiality" of HIV infection indicated its belief that, at the time of sentencing, J.Z. was *still* at risk from contracting HIV from the encounter with defendant. Rather, in context, the court was elaborating on the risk that J.Z. was exposed to, *at the time of the offense* in July 2015. That is, the court was discussing the "potentiality" of infection and attendant consequences that J.Z. was exposed to by defendant, in the course of emphasizing the seriousness of the offense.

¶ 37    The challenged remarks are consistent with the trial court's other commentary at sentencing. Before making the comments at issue, the court had noted that, due to medical advances, persons who are HIV positive can "engage in a regimen that maintains their health and * * * at least prevent it for an appreciable period of time from deteriorating." However, the court noted "there's no guarantee in that regard." Similarly, the court noted that due to "pharmacological

advances," a person with HIV "might be personally confident * * * that they won't infect somebody," but that there was no "guarantee" of no transmission. In sum, the court repeatedly emphasized that defendant knowingly exposed J.Z. to a risk of contracting a health condition with long-term consequences. The challenged comments are entirely consistent with this overarching concern.

¶ 38    The isolated statements referenced by defendant do not show that the trial court relied upon an improper aggravating factor or imposed an increased sentence because it believed that J.Z. was still at risk of HIV. Rather, the trial court was commenting on the risk of HIV transmission that defendant exposed J.Z. to at the time of the offense. Accordingly, defendant cannot meet his burden to establish that the sentence was based on improper considerations. *Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 39    As we have determined that there was no error, we need not go further in the plain-error analysis or otherwise discuss defendant's arguments regarding forfeiture.

¶ 40    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 41    Affirmed.