# Illinois Official Reports

## Appellate Court

---

### *People v. Cunningham*, 2018 IL App (4th) 150395

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER L. CUNNINGHAM, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0395 |
| Filed<br>Rehearing denied | October 4, 2018<br>October 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-CF-490; the Hon. Patrick W. Kelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>John C. Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Kathy Shepard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    In May 2014, defendant, Walter L. Cunningham, pleaded guilty to one count of burglary, a Class 2 felony (720 ILCS 5/19-1(a) (West 2012)). In August 2014, the trial court sentenced defendant to 20 years' imprisonment as a Class X offender, based on his prior convictions (730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2012)). Defendant appeals, arguing he was denied a fair sentencing hearing and received an excessive sentence. We disagree and affirm.

¶ 2                    I. BACKGROUND

¶ 3    In May 2013, the State charged defendant by information with residential burglary, a Class 1 felony (720 ILCS 5/19-3(a) (West 2012)). It alleged that on May 16, 2013, defendant, knowingly and without legal authority, entered the dwelling place of another with the intent to commit a theft. The State asserted the defendant entered a garage, a portion of which functioned as a residence.

¶ 4    In May 2014, defendant pleaded guilty to an amended charge of burglary, a Class 2 felony (720 ILCS 5/19-1(a) (West 2012)). The trial court explained to defendant that he faced a possible sentence of between 6 to 30 years in prison because he was a mandatory Class X offender based on his prior convictions. See 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2012). Defendant acknowledged that he understood his plea.

¶ 5    As a factual basis, the State alleged that on May 16, 2013, police were called to a garage at 416 West Vine Street in Springfield, Illinois, after witnesses reported seeing two black males enter the garage. Police found defendant and another male inside the garage and arrested them. Defendant did not have permission to be in the garage and evidence established that he had intended to commit a theft.

¶ 6    In August 2014, the trial court held a sentencing hearing and heard evidence in aggravation and mitigation. The State called Detective Michael Brown of the Springfield Police Department to testify in aggravation. Brown testified that in the two months immediately prior to defendant's arrest, 99 burglaries were reported in Springfield. Defense counsel made a general objection, and the State argued the testimony went to the need for deterrence. The court allowed the testimony for the sole purpose of deterrence. Brown did not suggest that defendant was involved in any other burglaries.

¶ 7    Brown testified he was familiar with defendant's case and aware that defendant had been found inside a garage. He stated that, during the course of his investigation, he spoke to several people defendant knew, including an "acquaintance" who reported that defendant was in the garage because he was "fulfilling orders for another gentleman." The State asked Brown if, over the course of the investigation, he learned of or developed any reason to believe defendant would burglarize again. Defense counsel objected, arguing that the question called for speculation. However, the trial court did not hear the full question, and the question was not repeated. The prosecutor immediately rephrased the question, asking whether Brown had interviewed defendant's codefendant and what the codefendant told Brown "about the defendant's intentions once he's released from prison after serving his sentence." According to Brown, defendant's codefendant stated defendant "had already picked out houses in the future that he was going to burglarize once he was released." Defense counsel did not obtain a ruling on the first objected-to question or object to the subsequent questioning.

¶ 8        Next, defendant presented the testimony of three witnesses in mitigation. Defendant's wife, Rhonda Cunningham, testified she had five children with defendant and that he was a good father to the children. Rhonda stated that, when defendant was not in prison, he provided for the family. She also testified she believed defendant had learned his lesson and would not commit another crime.

¶ 9        Defendant's mother, Shelia Cunningham, testified she suffered from Alzheimer's disease and that defendant took care of many things for her. She stated she had come to depend on his assistance in managing her bills and taking care of her. Shelia believed defendant had learned his lesson and would not commit another crime. A friend of defendant's family, James Laurenzana, testified that defendant was a good person and that a lengthy prison sentence was not appropriate.

¶ 10        The presentence investigation report (PSI) showed defendant had a criminal history that consisted of numerous misdemeanor convictions, including convictions for knowingly damaging property, aggravated assault, possession of cannabis, and resisting a peace officer, as well as 18 prior convictions for driving with a suspended license. Defendant also had four felony convictions, including a 2003 forgery conviction, 2004 and 2005 burglary convictions, and a 2009 residential burglary conviction. Further, defendant had previously served three terms of imprisonment in the Illinois Department of Corrections (DOC). The PSI also showed that defendant had substance-abuse problems with multiple different substances, including alcohol, cannabis, and cocaine. Defendant expressed a willingness to engage in a substance abuse treatment program. The PSI further showed defendant had earned his general education degree and that his employment history included some work for restaurants.

¶ 11        Following the presentation of evidence, defense counsel asserted that the parties had agreed on a 20-year sentencing cap. The State acknowledged that such an oral agreement had been made, and the judge stated he would abide by the 20-year cap.

¶ 12        In imposing sentence, the trial court stated it had considered the PSI, the financial impact of incarceration upon the State of Illinois, and all of the evidence in aggravation and mitigation. The court determined defendant's background showed he was "both a professional thief and a professional scofflaw." It acknowledged that no evidence showed any physically violent behavior in the offense at issue or in defendant's criminal history; however, the court found that defendant had caused "great psychological violence" over the years by violating the sanctity of people's homes and property.

¶ 13        The trial court found defendant's criminal history to be a key factor in aggravation and noted he had been to prison three times previously for burglary-related charges. The court also stated it "appear[ed]" from the evidence that defendant received compensation for committing the offense at issue.

¶ 14        Concerning mitigation, the trial court acknowledged that some evidence showed defendant's family needed him for support; however, it concluded defendant had done little to provide legal financial support for his family, given his very limited work history. The judge stressed the importance of deterrence as a factor in any sentencing and ruled that a 20-year sentence was appropriate for defendant. Defendant was also given 447 days of credit against the sentence for his pretrial incarceration and 3 years of mandatory supervised release.

¶ 15        Defendant filed a timely motion to reconsider sentence, followed by an amended motion to reconsider. The motion challenged defendant's sentence, arguing it was excessive and based on improper factors not supported by evidence. Defendant argued his sentence was excessive

because it was almost three times the length of his last sentence of imprisonment and of his codefendant's sentence. The motion further alleged generally that Brown's testimony was impermissible hearsay and, as a result, defendant was denied a fair sentencing hearing. Defendant requested a sentence of 14 years' or less imprisonment. In May 2015, the trial court denied defendant's amended motion to reconsider sentence.

¶ 16        This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18        On appeal, defendant argues the trial court erred in sentencing him to 20 years in prison. He contends he was deprived of his right to a fair sentencing hearing due to the court's erroneous admission of evidence, consideration of improper aggravating factors, and failure to consider relevant mitigating factors. Defendant further maintains that his 20-year sentence was excessive. The State argues the court committed no errors at sentencing that deprived defendant of a fair hearing or resulted in an excessive sentence. We agree with the State.

¶ 19                              A. Fair Sentencing Hearing
¶ 20                              1. *Admission of Evidence*
¶ 21        Defendant first claims he was denied a fair sentencing hearing due to the erroneous admission of evidence. Specifically, he argues the trial court erred by considering testimony from Brown regarding (1) the number of burglaries that occurred in Springfield prior to defendant's arrest and (2) statements obtained during Brown's investigation of the case, which defendant maintains contained "multiple" or "double" hearsay.

¶ 22        "The ordinary rules of evidence governing a trial are relaxed at the sentencing hearing." *People v. Williams*, 2018 IL App (4th) 150759, ¶ 17, 99 N.E.3d 590. "Moreover, 'a sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature.' " *Id.* (quoting *People v. Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992)). "At the sentencing hearing, evidence is admissible if it is relevant and reliable." *Id.*

¶ 23                                  a. Other Burglaries
¶ 24        As indicated, defendant's first challenge to the admission of evidence concerns Brown's testimony as to the number of burglaries that occurred in Springfield prior to defendant's arrest in this case. Defendant argues the testimony was irrelevant and resulted in a sentence that punished him for other people's crimes. The State responds that defendant forfeited this issue and, alternatively, that no error occurred because the testimony was relevant to the issue of deterrence, a proper sentencing factor.

¶ 25        Initially, we agree that defendant forfeited this issue. "[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010). Here, defendant failed to raise his claim of error in his amended motion to reconsider his sentence. In arguing that he did raise the issue, defendant cites a portion of his amended motion where he complained only that Brown testified "to pure hearsay with no competent proof." However, this argument does not challenge the relevancy of Brown's testimony regarding the number of burglaries in Springfield prior to defendant's arrest. Additionally, our review of defendant's

amended motion reveals no other reference to the challenged testimony. Accordingly, the issue has been forfeited by defendant.

¶ 26    In his reply brief, defendant argues his forfeiture should be excused under the plain-error doctrine. To obtain relief under the plain-error doctrine, "a defendant must first show that a clear or obvious error occurred." *Id.* at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* The defendant has the burden of persuasion when arguing that plain error occurred. *Id.* Additionally, "[a]s the first step in the analysis, we must determine whether any error occurred at all." *Williams*, 2018 IL App (4th) 150759, ¶ 16.

¶ 27    In this instance, we find no clear or obvious error. In exercising its broad sentencing discretion, a trial court "may logically give reasonable consideration to the need for deterrence as a factor in the imposition of a sentence." *People v. Cameron*, 189 Ill. App. 3d 998, 1010, 546 N.E.2d 259, 267 (1989). Thus, the need for deterrence was an appropriate consideration for the court. Moreover, the record reflects that the court admitted the testimony at issue for the "sole purpose" of showing the need for deterrence. Contrary to defendant's assertions on appeal, the record presented does not reflect that the court acted to punish defendant for the conduct of others when imposing sentence.

¶ 28                                      b. Hearsay

¶ 29    Defendant further argues that Brown testified to prejudicial multiple or double hearsay evidence during sentencing. Specifically, he challenges Brown's testimony that (1) defendant's codefendant told him that defendant had "already picked out" several places he was planning to burglarize once he was released from prison and (2) an "acquaintance" of defendant told him that defendant was "fulfilling orders for another gentleman" when he committed the offense at issue. The State responds that defendant forfeited these issues by failing to raise them with the trial court and, alternatively, that no error occurred.

¶ 30    We agree with the State and find defendant failed to preserve these issues for appellate review. Notably, defendant failed to make a contemporaneous objection to the challenged testimony at his sentencing and did not raise the issue of multiple or double hearsay at any point during the underlying proceedings. Again, defendant asserts his alleged sentencing errors are reviewable as plain error. However, like before, we find no clear or obvious error occurred.

¶ 31    "[H]earsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers." *People v. Foster*, 119 Ill. 2d 69, 98, 518 N.E.2d 82, 94 (1987). An objection to such evidence goes to the weight of the evidence and not its admissibility. *Id.* Generally, double hearsay is admissible if "at least some parts of the double hearsay have been corroborated by other evidence." *Id.* Further, uncorroborated hearsay "is not inherently unreliable," particularly when the information was compiled during the course of an official investigation and where the evidence was never directly challenged. *Id.* at 98-99.

¶ 32    Initially, we find that the challenged testimony from Brown failed to rise to the level of double hearsay. Brown testified regarding statements made to him by defendant's codefendant and one of defendant's acquaintances. Specifically, Brown testified that defendant's codefendant "stated [defendant] had already picked out houses in the future that he was going to burglarize once he was released" and that defendant's acquaintance reported that defendant

"was actually fulfilling orders for another gentleman" when he committed the charged offense. However, we find no indication that the statements to Brown by defendant's codefendant and defendant's acquaintance, in fact, originated from another source. The out-of-court statements of the codefendant and acquaintance constituted hearsay, but, on this record, there is no support for defendant's assertion that their statements necessarily contained double or multiple hearsay.

¶ 33    Further, although the testimony contained hearsay, we find it was relevant to the issues presented and reliable. Regarding the reliability of Brown's testimony, we note that it concerned information that was compiled during the course of an official police investigation and was not directly challenged below. *Id.* Further, Brown's failure to identify the acquaintance that provided him with information did not render his testimony inadmissible; rather, such lack of identification goes only to the weight to be given the evidence. See *People v. Moore*, 171 Ill. 2d 74, 113, 662 N.E.2d 1215, 1233 (1996) (finding that a law enforcement officer's inability to identify the source of information testified to at the defendant's sentencing did not render his testimony unreliable and, instead, went to the weight to be given the evidence).

¶ 34                              2. *Factors in Aggravation and Mitigation*

¶ 35    Defendant next contends he was denied a fair sentencing hearing because the trial court considered improper aggravating factors and failed to consider relevant mitigating factors. Specifically, he argues the court erroneously considered as aggravation that his conduct caused "great psychological violence" and that he received compensation for the offense at issue. Defendant further maintains the court ignored evidence in mitigation that he did not cause anyone serious physical harm during the commission of the offense and that his imprisonment would impose a hardship on his family.

¶ 36    "The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810 (citing Ill. Const. 1970, art. I, § 11). "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.* "[W]hether the trial court relied on an improper factor in imposing the defendant's sentence presents a question of law, which we review *de novo*." *Williams*, 2018 IL App (4th) 150759, ¶ 18. A strong presumption exists "that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." (Internal quotation marks omitted.) *Id.* Further, a defendant has the burden of establishing that the court relied on improper considerations. *Id.*

¶ 37    The Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2(a) (West 2012)) sets forth several aggravating factors that the trial court may consider at sentencing. Those factors include that:

> "(1) the defendant's conduct caused or threatened serious harm;
>
> (2) the defendant received compensation for committing the offense;
>
> (3) the defendant has a history of prior delinquency or criminal activity; [and]
>
> * * *

(7) the sentence is necessary to deter others from committing the same crime[.]" *Id.* Additionally, relevant factors that may operate to mitigate a defendant's sentence include that "[t]he defendant's criminal conduct neither caused nor threatened serious physical harm to another" and "[t]he imprisonment of the defendant would entail excessive hardship to his dependents." 730 ILCS 5/5-5-3.1(a)(1), (11) (West 2012).

¶ 38    As indicated, defendant first argues the trial court erred by considering that his crimes caused "great psychological violence." Defendant maintains the court's comments regarding psychological violence were not grounded in fact and that the record supports only the conclusion that defendant had a nonviolent criminal history.

¶ 39    Here, the record shows the trial court made the following comments when setting forth its sentencing decision:

> "Certainly [defendant is] not a physically violent man, I acknowledge that, that's proved beyond a doubt. There is no evidence of any physically violent criminal history, I don't believe.
>
> However, he has caused over the years great psychological violence to people. He's violated the sanctity of the home and the people's property, and he has terrorized neighborhoods, because when people burglarize neighborhoods, it creates great fear within those neighborhoods, and this Defendant certainly has done that a lot over the years."

The court's comments clearly reflect that it determined defendant was a physically nonviolent offender. Further, we agree with the State's contention that the court's comments demonstrate its consideration of the nature and circumstances of defendant's criminal history. See *People v. Thomas*, 171 Ill. 2d 207, 227-28, 664 N.E.2d 76, 87 (1996) (stating that "while the *fact* of a defendant's prior convictions determines his eligibility for a Class X sentence, it is the *nature and circumstances* of these prior convictions which, along with other factors in aggravation and mitigation, determine the exact length of that sentence" (emphases in original)). Here, the PSI showed defendant had four felony convictions—a 2003 forgery conviction, 2004 and 2005 burglary convictions, and a 2009 residential burglary conviction. The court's conclusion that he had violated the sanctity of the home and people's property was thus supported by the record and not error.

¶ 40    Second, defendant argues the court improperly determined, as an aggravating factor, that he received compensation for the underlying offense. He maintains his receipt of compensation was impossible because he was caught and arrested before stealing any property. Defendant also contends that the court's determination was improperly based on its finding that defendant received compensation for past offenses rather than solely the offense charged in this case.

¶ 41    As an aggravating factor, the receipt of compensation "applies only to a defendant who receives remuneration, other than proceeds from the offense itself, to commit a crime." *People v. Conover*, 84 Ill. 2d 400, 405, 419 N.E.2d 906, 909 (1981). With respect to this aggravating factor, "[i]t is reasonable to conclude that *** the legislature intended to impose a harsher sentence on one who is paid to commit a burglary or theft than on one who commits it on his own volition." *Id.*

¶ 42    Here, the trial court stated as follows with respect to the issue of compensation: "It would appear that [defendant] was compensated for the crime. There was testimony from the defense

that he was supporting his family, and yet he was not employed, so one can only infer that that support came from the fruit of crimes ***." We agree that it is improper for a court to rely on a defendant's past criminal history or "the fruit" of past or present crimes when considering whether "the defendant received compensation for committing the offense." 730 ILCS 5/5-5-3.2(a)(2) (West 2012). Nevertheless, here, Brown's testimony that defendant was "fulfilling orders for another gentleman" when he committed the offense in this case, supports an inference that defendant received compensation for committing the burglary at issue and that the commission of the offense was not solely at his own volition. Accordingly, we find no error in the consideration of this aggravating factor.

¶ 43    Third, as stated, defendant argues the trial court improperly failed to consider mitigating evidence that he did not cause or contemplate serious physical harm when committing the offense and that imprisonment would serve a hardship to his family. The State contends defendant forfeited these claims because they were not specifically set forth in his amended motion to reconsider sentence. Defendant responds that any forfeited claim may be reviewed for plain error.

¶ 44    In this instance, we find no error occurred. The record refutes defendant's contention that the trial court failed to give "any consideration to the absence of violence either in this crime or in any of [defendant's] past offenses." In fact, that court explicitly stated defendant was "not a physically violent man" and there was "no evidence of any physically violent criminal history." The court's comments clearly reflect its consideration that defendant was not a physically violent offender.

¶ 45    Additionally, the record reflects that the trial court also clearly considered the mitigating factor of whether defendant's imprisonment would cause a hardship to his family. The court referenced this factor when discussing the evidence in mitigation but found it did not apply. Specifically, it stated that although some evidence was presented that defendant's family needed him for support, defendant had a limited work history and there was "not much evidence that [he] legally supported his family in any financial sense." Although defendant correctly asserts that the "hardship to family" factor may entail more than just financial support, the record also contains evidence indicating defendant's ability to provide other types of support was limited. In particular, defendant had an extensive criminal history and had been sentenced to DOC on at least three prior occasions. Most recently, he received a seven-year sentence of imprisonment in 2009. Accordingly, we can find no error in the court's determination that this factor was entitled to little or no weight.

¶ 46                                B. Excessive Sentence

¶ 47    Finally, on appeal, defendant argues his 20-year sentence was excessive.

¶ 48    "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494. "A sentence within the statutory range will not be deemed excessive, and will not be disturbed, unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Harris*, 2015 IL App (4th) 140696, ¶ 55, 32 N.E.3d 211.

¶ 49    Here, defendant relies heavily on the First District's decision in *People v. Allen*, 2017 IL App (1st) 151540, ¶ 23, 95 N.E.3d 1162 (majority opinion), in arguing that his situation is almost identical if not less severe than the defendant in *Allen*, where the defendant's sentence

was reduced. In *Allen*, Justice Hyman, joined by Justice Pucinski, concluded that a reduction of sentence is proper where the sentence was disproportionate to the nature of the offense. *Id.* ¶ 15. In coming to this conclusion, the majority stated, "[t]he legislature has created sentencing ranges, and it is the trial court's job, and then our job, to impose a sentence that is appropriate, just, and proportionate, depending on the nature, seriousness, and character of the offense." *Id.* ¶ 16.

¶ 50    In *Allen*, the defendant broke a truck window and took a hat with two packs of cigarettes in it. *Id.* ¶ 15. The defendant dropped those items after being discovered, and the items were later recovered. *Id.* He was sentenced as a Class X offender due to his criminal history. *Id.* ¶ 6. The defendant had a long history of committing burglary and comparable crimes but no history of violence. *Id.* ¶¶ 17-18. The defendant showed little remorse for his crimes and was sentenced to 10½ years' incarceration. *Id.* ¶¶ 19, 22.

¶ 51    The majority in *Allen* relied on *People v. Busse*, 2016 IL App (1st) 142941, ¶ 31, 69 N.E.3d 425 (majority opinion), wherein Justice Hyman, joined by Justice Neville, carved out a "petty offense" exception to legislatively mandated Class X sentencing in order to reduce a sentence over the six-year minimum. The defendant in *Busse* was caught stealing $44 worth of quarters from a university vending machine. *Id.* ¶ 1. The defendant had a long criminal history of committing the same crimes but was not considered violent. *Id.* ¶ 2. The trial court sentenced him to 12 years' imprisonment. *Id.* ¶ 1. On appeal, the defendant's sentence was reduced to 6 years because the majority concluded that the 12-year sentence did not reflect the seriousness of the offense. *Id.* ¶¶ 34, 38.

¶ 52    Here, defendant argues that he did not actually steal anything while the defendant in *Allen* did. See *Allen*, 2017 IL App (1st) 151540, ¶ 15 (majority opinion). Neither defendant herein nor the defendant in *Allen* was considered violent; but the defendant in *Allen* had one robbery in his background, whereas defendant herein has never been convicted of a violent felony. See *id.* ¶¶ 17-18. Defendant points out that the defendant in *Allen* never accepted responsibility for his actions, whereas defendant herein accepted responsibility when he pleaded guilty. See *id.* ¶ 19. The *Allen* majority found 10½ years to be excessive and reduced the defendant's sentence to 6 years. *Id.* ¶¶ 21-22. Defendant argues he is serving 20 years for an offense that is no more serious then the defendant in *Allen*.

¶ 53    By contrast, Justice Mason dissented in *Allen*, reinforcing points from her dissent in *Busse*. In her dissent, Justice Mason stated the legislature chose to have Class X sentencing encompass any Class 1 and Class 2 felonies, even minor ones. *Id.* ¶ 26 (Mason, J., dissenting). Therefore, the court does "a disservice to trial judges to find that they have abused their discretion when they apply a statute as written, which is exactly what the trial court did here [in *Allen*]." *Id.* ¶ 35. Justice Mason held that the defendant's sentence, which was within the applicable statutory range, was not an abuse of discretion because of the defendant's lengthy criminal history and his lack of remorse. *Id.* ¶¶ 27, 30. While Justice Mason expressed support for the majority's concern with the range of offenses subject to Class X sentencing, she found the reviewing court is not the branch of government to which that decision has been committed. *Id.* ¶¶ 35, 37.

¶ 54    While defendant in this case argues his offense is not serious enough to receive a Class X punishment, we agree with Justice Mason that it is for the legislature to enact the laws, not this court. Here, we only determine if the trial court abused its discretion in sentencing defendant based on his criminal history and factors in aggravation and mitigation. We find that

defendant's sentence was within the statutory sentence range based on his lengthy criminal history and his potential to recommit similar offenses.

¶ 55        Additionally, the Illinois Supreme Court does not favor a "comb the books" approach to sentencing. See *People v. Fern*, 189 Ill. 2d 48, 62, 723 N.E.2d 207, 214 (1999) ("[A] claim that a sentence is excessive must be based on the particular facts and circumstances of that case. If a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case."). This court has rejected and declined to "reward defendants who 'comb the books' to find a handful of cases presenting lesser sentences for the same statutory offense, thus enabling those defendants to then argue that the lesser sentences they found become the effective maximum sentences a trial judge can impose without expecting a remand for [each] resentencing." *People v. Terneus*, 239 Ill. App. 3d 669, 677, 607 N.E.2d 568, 573 (1992). We adhere to our *Terneus* approach and agree with Justice Mason's analysis in her dissents in *Allen* and *Busse*.

¶ 56        Here, the record fails to reflect that the trial court abused its discretion when weighing the relevant aggravating and mitigating factors. Also, the imposed sentence was well within the applicable sentencing range, given defendant's status as a Class X offender. Defendant has not shown he was denied a fair sentencing hearing based on the testimony in the record, and the court did not abuse its discretion in sentencing him to 20 years' imprisonment.

¶ 57                                      III. CONCLUSION

¶ 58        For the reasons stated, we affirm defendant's conviction and sentence. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 59        Affirmed.