NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 200172-U

NO. 4-20-0172

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 1, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Mason County |
| CHARLES A. FLYNN, | ) | No. 19CF67 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Alan D. Tucker, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court's judgment is affirmed as defendant forfeited the issues raised on appeal.

¶ 2    In December 2019, a jury found defendant Charles A. Flynn guilty of burglary (720 ILCS 5/19-1(a) (West 2018)), theft (over $500 but less than $10,000) (720 ILCS 5/16-1(a)(1), (b)(4) (West 2018)), and criminal trespass to a motor vehicle (720 ILCS 5/21-2 (West 2018)). In January 2020, the trial court sentenced defendant to concurrent prison terms of 17 years for burglary and 5 years for theft. In addition, the court sentenced defendant to 191 days of jail for criminal trespass to a motor vehicle. Defendant received credit for 191 days served. Defendant appeals, arguing the trial court did not properly admonish some of the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and abused its discretion in sentencing defendant because it did not consider his mental health in mitigation.

We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            During the jury selection process at defendant's trial, the trial court told all the potential jurors defendant was presumed innocent, did not have to put on any evidence, and bore no burden of proof. The court also told the potential jurors: "the defendant may testify in this case or he may not testify in this case, he has the right to remain silent, and if he elects not to testify in that case, you cannot place any emphasis on that. You cannot use that against him. That is his absolute right."

¶ 5            The trial court then questioned 20 of the potential jurors. The court admonished the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). With regard to the fourth principle in Rule 431(b), the court stated defendant's "failure to testify cannot be held against him." Eleven of these 20 individuals were selected to serve on the jury. Defendant did not object to the court's admonishment.

¶ 6            The trial court then questioned 10 more potential jurors. After asking some preliminary questions, the court admonished these individuals pursuant to Rule 431(b). This time, with regard to the fourth principle, the court told the potential jurors "that if [defendant] does not testify that cannot be held against him." The twelfth juror and alternates were selected from this group.

¶ 7            During the trial, the State introduced a recording from the Mason City Fast Stop's surveillance equipment from July 4, 2019, which was the date of the charged activity in this case. Fast Stop is a gas station and retail store that sells lottery tickets, soda, beer, cigarettes, tobacco, liquor, food, and snacks. Donna Danley, who managed the store, testified she reviewed the surveillance footage from when the last employee left at 11:30 p.m. on July 3 until around 2:45

- 2 -

a.m. on July 4 when the store's lights and cameras stopped working. Security footage from one of the store's cameras during this period showed a man outside the front of the store walking back and forth for about 20 minutes before the cameras stopped operating. The store's surveillance cameras did not record anyone inside the store during the period between the last employee leaving after closing the store and the store losing power. The store's cameras were not working while the store did not have power.

¶ 8       Aaron Ahart testified he was working as a police officer in Mason City on July 4, 2019. He was no longer employed as a police officer. On July 4, he was dispatched to the Fast Stop at approximately 3 a.m. On cross-examination, defense counsel pointed out Ahart's police report indicated he arrived at the store at 3:59 a.m. Ahart testified the store's power was off when he arrived. It appeared a brick or some other object had been thrown through the store's window. Ahart stated Sally Griffin and Dan Mason were on the scene when he arrived. However, on cross-examination, defense counsel pointed out Ahart's trial testimony was inconsistent with testimony he provided at the preliminary hearing. Ahart then testified he did not recall exactly who was on the scene with Griffin when he arrived at the store.

¶ 9       According to Ahart's testimony, he entered the store to determine if anyone was present. He observed the cash drawer had been disassembled, the store was ransacked, and a brick was on the floor. He then went outside, secured the perimeter of the building with crime scene tape, and observed the electrical line at the back of the store had been cut. As he was approaching Griffin, she screamed that someone was in her car. He then apprehended and arrested defendant just outside of Griffin's vehicle. Defendant appeared to be wearing a purplish colored woman's shirt or jacket. After defendant's apprehension, defendant said, "they made me do it." Ahart found a blue bag inside Griffin's vehicle, which Ahart had observed in defendant's

possession earlier in the evening in front of the gas station. Ahart admitted he did not recall seeing defendant inside Griffin's vehicle or exiting the vehicle.

¶ 10 Ahart also indicated he did not see defendant at the store when he first arrived. However, he testified he had "dealt with defendant earlier in the evening." It is not clear what Ahart meant. Ahart did not observe any cuts on defendant, glass on defendant's shoes or his person, or blood on the floor of the gas station. Further, he did not recover any tools from defendant that could have been used to cut the store's electrical lines.

¶ 11 On redirect examination, Ahart testified he did not suspect Randy Jackson or Dan Mason of committing the robbery because they were both regular customers of the store.

¶ 12 Erin Bowers, a crime scene investigator with the Illinois State Police, arrived at the gas station on July 4 at 8:55 a.m. She took a picture of cutters found near the meter where the electrical wires had been cut. She also photographed the following items she found inside Griffin's vehicle: a white trash can, a clear plastic container containing lottery tickets, a blue-colored bag or cloth, a Crown Royal container, and rolls of coins. She also photographed an orange-red shirt and jeans found in the blue bag. After she took photographs of the different objects, she collected the physical items as evidence. She did not process or recover any fingerprints belonging to defendant at the crime scene. She also did not know if defendant's DNA was present.

¶ 13 Mason City Assistant Chief of Police Justin Donovan testified he went to the scene of the burglary on July 4 and met with Investgator Bowers, who gave him the evidence she had collected. He took the evidence back to the police station and inventoried it. The face value of the lottery tickets Investigator Bowers recovered from the back of Griffin's car was $3617. Assistant Chief Donovan determined the change recovered by Investigator Bowers

- 4 -

totaled $67.50. He also recognized the jeans and shirt Investigator Bowers recovered from the blue bag found in Griffin's car appeared to be the clothes defendant was wearing on July 3, 2019.

¶ 14 Daniel Mason, a Mason City resident since 1966, testified he went to the Fast Stop every morning and knew Griffin. He would also see Randy Jackson, an area farmer, at the gas station almost every day. On July 4, when he got to the store, Griffin and Officer Ahart were there. Griffin was standing outside the store and appeared to be in shock, so he tried to calm her down. He and Griffin watched Officer Ahart put up crime scene tape. At some point, Griffin turned around and said someone was in her vehicle. Mason saw the vehicle's back door was open and someone bent down in the back seat. Officer Ahart came over to the car and arrested defendant. Mason testified Jackson was not at the store when Mason got there.

¶ 15 Griffin testified she was a cashier at the store and had keys to the building because she frequently opened the store. The store opened at 5 a.m., and she would get to the store at 3:45 a.m. She testified defendant was not an employee of the store and was not authorized to be in the store when it was closed.

¶ 16 According to Griffin, when she left her residence on July 4 to go to work, she did not notice anything unusual in her car, she was by herself, and she did not pick anyone up. The only things in the backseat of her car were some car parts and a bag with some children's clothes.

¶ 17 Griffin stated she arrived at the store at approximately 3:45 a.m. The building was dark, which was unusual. She noticed the window was broken when she approached the building. Griffin called her boss who told her to call 911, which she did. Officer Ahart arrived at the store within a few minutes. Randy Jackson, who lived next to the gas station, walked up to

see what was happening. According to Griffin, Jackson was a regular customer of the gas station early in the mornings. When Jackson saw the police responding to the scene, he continued his walk.

¶ 18 Griffin told Officer Ahart what she found when she arrived. She unlocked the door for Officer Ahart so he could look inside. Officer Ahart went inside for approximately five minutes and then started putting up crime scene tape around the building's exterior. Dan Mason drove up while Griffin was smoking a cigarette in her car. Her car's dome light was turned off, and no one else was in the car. Griffin exited her car to speak with Mason. As Officer Ahart was finishing putting up the crime scene tape, Griffin saw a person in the back seat of her car and yelled because she did not know where the person had come from. Officer Ahart then ran over and arrested defendant outside her car.

¶ 19 According to Griffin, defendant was wearing her coat, which she had left at the store on July 3 and had not given defendant permission to have. She also identified defendant as the person who was in front of the gas station shortly before the security cameras stopped working. Griffin stated many items from the store were in the back seat of her car after defendant was arrested. These items included a garbage can, Crown Royal, Newport cigarettes, lottery tickets, sunglasses, and rolls of change. Griffin testified she did not give defendant permission to be in her vehicle.

¶ 20 Defendant chose not to testify.

¶ 21 The jury found defendant guilty of burglary, theft, and criminal trespass to a motor vehicle. The jury found defendant not guilty of criminal damage to property.

¶ 22 At defendant's January 2020 sentencing hearing, defendant did not present any evidence in mitigation. The State recommended a 25-year prison sentence because of

defendant's criminal history.  The State also asked the trial court to consider the victims in this case and the deterrent effect of defendant's sentence on others.

¶ 23            Defense counsel asked the court to impose the minimum six-year prison sentence, arguing defendant was not armed, made no threats of violence, and cooperated with the police when they arrived.  While acknowledging defendant's prior burglary convictions made him eligible to be sentenced as a habitual offender, defense counsel argued the majority of his crimes as an adult were traffic, drug, and alcohol offenses.  Defense counsel stated, "I think the drug and alcohol offenses point to another mitigating factor of mental illness."  According to defense counsel, drugs and alcohol had seriously impacted defendant's life and led to defendant being unemployed and homeless.

¶ 24            The trial court indicated it had reviewed the presentence report and the evidence and exhibits presented, considered the application of aggravating and mitigating factors, and also considered arguments of the parties and defendant's statement.  The court noted defendant had a history of delinquency and criminal activity, including prior burglaries, crimes of violence, and other offenses.  While recognizing defendant's crimes of violence were "fairly minimal" compared to other crimes the court had seen, the court noted defendant has spent most of his adult life in prison, which weighed heavily on the court's sentencing decision.  Further, the court indicated defendant's sentence needed to deter others from committing similar crimes.  As for the presence of mitigating factors, the court indicated defendant's conduct neither caused nor threatened serious physical harm to another.  However, the court found no other mitigating factors applied.  The court sentenced defendant to concurrent terms of 17 years for burglary, 5 years for theft, and 191 days for criminal trespass to a motor vehicle, with 191 days of sentence credit, and 3 years of mandatory supervised release (MSR).

¶ 25    In February 2020, defendant filed a motion to modify or reconsider his sentence. Defendant did not allege the trial court failed to consider any applicable mitigating factors. The trial court denied defendant's motion.

¶ 26    Defendant appealed.

¶ 27                                II. ANALYSIS

¶ 28                    A.  Illinois Supreme Court Rule 431(b)

¶ 29    Defendant first argues he is entitled to a new trial because the trial court did not comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because it told 20 of the potential jurors that "defendant's failure to testify cannot be held against him" instead of phrasing the admonition, "if defendant does not testify it cannot be held against him."

¶ 30    Defendant concedes he forfeited this issue because he failed to object to the language the trial court used. However, he asks this court to review the alleged error pursuant to the first prong of the plain error doctrine. Traditionally, our supreme court has identified two situations where it is appropriate for an appellate court to exercise its discretion and excuse a defendant's procedural default. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. The first situation is if "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410 (2007). The second situation is if "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 410-11.

¶ 31    Generally, "[t]he initial analytical step under either prong of the plain error

doctrine is determining whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49. The trial court in this case did not use the precise language contained in Rule 431(b)(4) when it admonished the potential jurors.

¶ 32            When defendant's trial was held, Supreme Court Rule 431(b)(4) stated:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: *** (4) that if a defendant does not testify it cannot be held against him or her[.]" Ill. S. Ct. R. 431(b)(4) (eff. July 1, 2012).

Prior to July 1, 2012, the rule stated in relevant part:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: *** (4) that the defendant's *failure to testify* cannot be held against him or her[.]" (Emphasis added.) Ill. S. Ct. R. 431(b)(4) (eff. May 1, 2007).

With regard to the fourth proposition, the trial court in this case told the potential jurors the defendant's failure to testify could not be held against him. As a result, the trial court used language our supreme court has removed from Rule 431(b)(4).

¶ 33            As a result, defendant argues the trial court's admonitions did not comply with Rule 431(b)(4). The State disagrees, arguing the trial court's use of the language "failure to testify" was not a "clear or obvious error." However, even if we assume *arguendo* the trial court's admonishment was a clear or obvious error, the evidence in this case was not closely balanced. The State presented evidence defendant was outside the gas station in the middle of the night while the station was closed, shortly before the power inside the station went out. The State also introduced evidence defendant was inside Griffin's vehicle without her permission

after the gas station had been broken into. Further, the jury heard testimony items taken from the gas station were found in Griffin's car after defendant was seen inside the car and arrested. In addition, the police found items in Griffin's car which appeared to be defendant's personal property that he possessed the day before the crimes occurred. This personal property included a blue bag, an orange-red colored shirt, and blue jeans. Griffin testified these items were not in her car before defendant entered it. Because the evidence was not closely balanced, defendant cannot demonstrate first-prong plain error, and we will not excuse his forfeiture.

¶ 34                                B. Defendant's Sentence

¶ 35        Defendant next argues the trial court abused its discretion when it sentenced him without considering evidence of his mental health, a statutory mitigating factor. According to defendant's brief, "the trial court ignored the connection between [defendant's] struggles with substance abuse and his mental health. [Citation.] In turn, the court overlooked [defendant's] mental health as a statutory factor in mitigation."

¶ 36        To preserve a sentencing issue for appeal, a defendant must both object at the sentencing hearing and raise the issue in a motion to reconsider sentence. *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 25, 115 N.E.3d 423. The State argues defendant neither objected to the court's findings of mitigation and aggravation at the sentencing hearing nor raised the issue in his motion to reconsider his sentence. Defendant clearly did not argue the trial court failed to consider defendant's history of substance abuse and/or his mental health issues as mitigating factors in his motion to reconsider his sentence. As a result, we agree defendant forfeited these issues on appeal.

¶ 37        Regardless of forfeiture, defendant asks this court to review this issue pursuant to the plain error doctrine. As stated earlier, generally speaking, the first step of any plain error

analysis is to determine whether the trial court made a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187.

¶ 38 The State points out the trial court did not have to look at defendant's drug and alcohol abuse as mitigating evidence. We agree. Our supreme court has stated it "has never held *** that a sentencing judge must consider [a] defendant's drug use as a mitigating factor in sentencing decisions." *People v. Shatner*, 174 Ill. 2d 133, 159, 673 N.E.2d 258, 270 (1996). The fact a defendant views his drug use as a mitigating factor does not require a sentencer to do so. *Shatner*, 174 Ill. 2d at 159, 673 N.E.2d at 270. Relying on *Shatner*, this court has stated a sentencing court could conclude a "defendant's drug addiction lessened his rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 108, 126 N.E.3d 703. Based on the facts here, the trial court's determination not to treat defendant's issues with substance abuse as a mitigating factor was not a clear or obvious error.

¶ 39 As for defendant's mental health, defendant notes the presentence report indicated his use of methamphetamine had affected his mental health and he was hospitalized in 2015 with "hallucinations caused by meth-induced sleep deprivation." This is the only information defendant identified in his appellant's brief to show he had mental health issues. According to the presentence report:

> "The defendant reports he was hospitalized on the psychiatric floor of
> Memorial Medical Center in 2015. He stated he was having hallucinations caused

by meth-induced sleep deprivation. He indicated he was prescribed medication, which he did not continue to take after being released.

The defendant stated he participated in an anger management class while incarcerated in the Illinois Department of Corrections, but has had no other mental health counseling."

We note defendant's hospitalization was in 2015. The offenses in this case occurred in July 2019. Defendant presented no evidence he was having mental health issues in July 2019.

¶ 40 Under section 5-5-3.1(a)(16) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(16) (West 2018)), if a defendant was suffering from a serious mental illness which affected his ability to understand the nature of his actions or his ability to conform his conduct to the requirements of the law but was insufficient to establish the defense of insanity, a sentencing court should give the defendant's mental illness "weight in favor of withholding or minimizing a sentence of imprisonment." Defendant did not present the sentencing court with information he was suffering from any kind of serious mental illness at the time of the offenses. As a result, he has failed to meet his burden of showing the sentencing court committed a clear or obvious error when it did not consider his alleged mental illness as a mitigating factor.

¶ 41 In his initial brief, defendant also argued the sentence the trial court imposed was "wholly inconsistent with the seriousness of his non-violent offense and mitigating circumstances." However, as previously indicated, defendant failed to establish the trial court committed a clear or obvious error by not considering his substance abuse or his alleged mental health issues as mitigating evidence. Defendant also failed to otherwise expand on his argument the sentence imposed is "wholly inconsistent with the seriousness of his non-violent offense."

¶ 42 "The trial court has broad discretionary powers in imposing a sentence, and its

sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). The reason courts of review give deference to trial courts' sentencing decisions is because the trial court is able to observe the trial proceedings and the defendant while a reviewing court can only examine the cold record. *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066. The trial court can consider a defendant's demeanor, credibility, mentality, social environment, general moral character, habits, and age in determining an appropriate sentence to impose. *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066. As a result, a reviewing court must not overrule a trial court's sentencing decision simply because it may have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066. A reviewing court may not disturb a sentence imposed unless the trial court abused its discretion. *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066. "A sentence will be deemed an abuse of discretion where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066.

¶ 43         At the sentencing hearing, the State recommended a 25-year prison sentence. Defense counsel argued for a six-year sentence contending this was not a very serious offense. Defendant's criminal history qualified him for a Class X sentence of between 6 and 30 years under the habitual criminal statute (730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2018)).

¶ 44         The trial court indicated it reviewed the presentence report and the evidence and exhibits presented by the State, considered the aggravating and mitigating factors and arguments of counsel, and heard defendant's statement. With regard to aggravating factors, the court noted defendant's extensive history of delinquency and adult criminal activity, including multiple burglaries, multiple violent crimes, and the fact defendant had spent most of his adult life in

prison.  In addition, the court noted a sentence that would deter others from committing similar crimes was necessary to keep the community and businesses safe.

¶ 45    The trial court recognized defendant's conduct in this case did not cause or threaten serious physical harm to another.  However, the court found no other mitigating factors applied.  As stated earlier, defendant failed to establish this was a clear or obvious error by the court.  The court also noted defendant had been given opportunities to rehabilitate himself while on MSR and in prison and had failed to take advantage of those opportunities.  The court then sentenced defendant as previously indicated.

¶ 46    Based on our review of the record, the trial court did not abuse its discretion in sentencing defendant.  The sentence imposed by the trial court is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense[s]." (Internal quotation marks omitted.)  *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we affirm the trial court's judgment.

¶ 49    Affirmed.