NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230745-U

NO. 4-23-0745

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ADRIAN B. ISOM GREGORY, | ) | No. 20CF214 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not consider improper sentencing factors in imposing a 10-year sentence for aggravated battery with a firearm, so defendant was not deprived of a fair sentencing hearing.

¶ 2    Defendant Adrian B. Isom Gregory was convicted of aggravated battery involving the use of a firearm (720 ILCS 5/12-3.05(e)(1) (West 2020)) following a stipulated bench trial and sentenced to 10 years in prison. On appeal, he argues that he was denied a fair sentencing hearing because the trial court improperly considered its own personal knowledge and feelings regarding gun violence in the City of Peoria.

¶ 3    We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In April 2019, the State charged defendant with one count of attempted first degree murder (count 1) (*id.* § 8-4(A), 9-1(a)(1)), and one count of aggravated battery (count 2) (*id.* § 12-3.05(e)(1)), both Class X felonies, relating to the March 26, 2019, shooting of Nicholas Petty. Additional counts were filed in June 2020; count 3 alleged attempted first degree murder (*id.* § 8-4(A), 9-1(a)(1)) and count 4 alleged that defendant, in committing a battery, knowingly discharged a firearm in the direction of Petty and injured him (*id.* § 12-3.05(e)(1)).

¶ 6        Prior to the June 2023 trial, the parties reached an agreement whereby counts 1, 2, and 3, were dismissed, and the case proceeded to a stipulated bench trial on count 4. If defendant were found guilty, the agreement also capped any potential sentence of imprisonment at 15 years.

¶ 7        According to the State's proffer, the evidence would have shown that on the afternoon of March 26, 2020, Officer (now Detective) Nicholas Cox was called to an address on Hanssler Place in Peoria, Illinois, "on report of a person who had been shot." Upon arrival at the scene, Officer Cox found the victim, Nicholas Petty, sitting on the front steps of the residence and observed that Petty had clearly been shot and was bleeding from his leg.

¶ 8        Officer Cox spoke to the owner of the residence, the victim's girlfriend Yarlynn Washington, who showed Officer Cox the video her home's security camera recorded of the shooting. According to the proffer, Officer Cox would testify that the video depicts two people walking down the sidewalk when one of them ran up to the victim, pulled out a gun, and fired six shots. Officer Cox then located six cartridge casings on the driveway and alerted the crime lab officer, Officer Scott Bowers, to their location.

¶ 9        According to the proffer, the State would then call then Captain Dixon (now Assistant Chief), who, "would also testify that he arrived a little after Detective Cox did" and that he "watched that video that Ms. Washington showed them on the phone." According to the proffer,

when Dixon watched the video, "he could see that the individual who ran up with the gun and shot the victim, before he ran up the driveway had a cigarette in his hand and had thrown it down on the sidewalk." The proffer further established that the cigarette was recovered, tested by the Illinois State Police lab, and, after comparing the DNA profile from the cigarette to a DNA sample obtained by warrant from defendant, a match was established. According to Heather Wright of the Illinois State Police lab, "the defendant was not at all excluded as contributing to that profile."

¶ 10    The State's proffer further stated that it would have called then Detective Legaspi, who investigated the incident. According to the proffer, the police obtained a warrant for defendant's shoes and "while [the police] could not say that they're exactly the same shoes, [they] did notice that they're similar or at least the same type of shoe that the defendant is wearing on the video." The State's proffer concluded with the following:

> "So, Judge, in that the defendant's DNA was on the cigarette that he dropped before he approached the victim and it was all captured on the video and so that DNA could identify the defendant the officers had noticed and seen that it was in fact Nicholas Petty that was shot, that would be the sum and substance of that Count 4 being aggravated battery with a firearm."

¶ 11    In response, defendant raised an issue concerning his sixth amendment right to confront the victim (see U.S. Const., amend. VI), but he eventually stipulated to the videos and to the State's proffer. In response to the sixth amendment issue raised by defendant, the State said, "This crime was captured entirely on a video and the people who watched the video and were on the scene were able to identify the individuals involved."

¶ 12    The trial court found defendant guilty on count 4. According to the court:

"With that, based upon the stipulated facts as presented, the Court finds [defendant] guilty of the Class X felony of aggravated battery as alleged in Count 4 in that he in committing a battery without legal justification did knowingly discharge a firearm, being a handgun, in the direction of Nicholas Petty thereby causing injury to Nicholas Petty by means of discharging that firearm beyond a reasonable doubt."

¶ 13            Defendant filed a motion for new trial, arguing a violation of his sixth amendment right to confront the victim. In its oral response, the State argued that "the issue was that the victim would not have been here at the trial to point out the defendant, but that's not a Sixth Amendment violation. We stipulated to the evidence, which is that the defendant on video shot Mr. Petty." The motion was denied.

¶ 14            At the August 24, 2023, sentencing hearing, the trial court reviewed the statements offered in support of defendant, including the testimony of his older sister, Amber Isom. It also heard arguments of counsel, during which defense counsel requested a sentence of 6 years and the State requested a sentence of 15 years. The parties agreed that the penalty range, without any cap, would have been between 6 and 30 years in the Illinois Department of Corrections, "served at 85 percent," and "because it's a truth in sentencing a [three-year] [mandatory supervised release] would apply." Also, because of the class of felony involved, defendant was not subject to probation.

¶ 15            A presentence investigation report (PSI) was filed on August 11, 2023, which highlighted his history of criminality, including prior gun charges, namely, possession of a firearm (Peoria County case No. 06-CF-148) and aggravated unlawful use of a weapon (Peoria County case No. 08-CF-1283). It also noted that, since his arrest for the crimes alleged in this case, and

while he was released on posted bond, defendant had been arrested and charged with reckless homicide and aggravated reckless driving (Peoria County case No. 21-CF-169).

¶ 16 Defendant then offered his own statement in allocution, saying, among other things, that he was "sorry for contributing to the ignorance and violence that has cursed our city of Peoria." Following defendant's statement, the trial court made the following remarks and findings:

"The Court has considered the presentence investigation, evidence, the arguments, the statement of allocution of the defendant, have considered all the statutory factors in aggravation and mitigation, the history and character of [defendant], and having due regard for the circumstances and the nature of the offenses I find as follows:

And, first of all, *** it's clear you have a lot of people that really love and care about you and that speaks volumes.

***

It makes the Court sad to see these situations where guns are involved. It's having a terrible impact on our city."

¶ 17 The following exchange then took place between the trial court and defendant:

"THE COURT: Imagine—you can imagine—

THE DEFENDANT: Yes, ma'am.

THE COURT: —being the person that's shot and it's got to be deterred. It's adversely affecting everyone. And it could have been so much worse. It could have been so much worse.

And, Mr. Isom Gregory, I will tell you that I have an independent recollection of you. You have appeared in front of me many times.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I will tell your family that you've always been respectful. You have been someone that the Court has appreciated your attitude throughout. And from that perspective, your family did you right.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: You're welcome. But there's no getting around you shot at somebody and that kind of behavior has got to be deterred. And your criminal history is—I've seen a lot worse. That's all I'll say, I've seen a lot worse.

And I know, I know everybody sitting out there, this is very emotional for you and I do appreciate that. And I hope that when I announce what my decision is, that you'll pay the Court its proper respect. And I understand that this is someone that you care about and you love. At the end of the day, there are rules that you have to follow."

¶ 18     The trial court then made the following finding: "I have considered the facts, as I stated, PSI, and your behavior up until this incident, and I'm going to sentence you to 10 years in the Department of Corrections." The court also awarded defendant credit for his time served in custody once he surrendered on bond.

¶ 19     This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21     On appeal, defendant does not challenge his conviction following the stipulated bench trial. Instead, he argues that he did not receive a fair sentencing hearing and asserts that the trial court improperly considered its own knowledge and feelings about gun violence in the City of Peoria. Defendant requests that his sentence be vacated and that this court remand the matter

for a new sentencing hearing or, in the alternative, that we reduce his sentence to a term of six years.

¶ 22                           A. Forfeiture

¶ 23        The State properly notes, and defendant concedes, that no issue concerning sentencing improprieties was raised during the sentencing hearing or by a subsequent motion to reconsider sentencing. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see *People v. Brown*, 2023 IL App (4th) 220476, ¶ 34 ("To preserve a claim of error, a defendant must object to the error at trial and raise the error in a posttrial motion; otherwise, the claim is forfeited.") (citing *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 51). Accordingly, we conclude he has forfeited this issue. However, defendant asks us to review his contentions under the plain-error doctrine (Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967)).

¶ 24                        B. Plain-Error Doctrine

¶ 25        To obtain relief under the plain-error doctrine, " 'a defendant must first show that a clear or obvious error occurred.' " *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 26 (quoting *Hillier*, 237 Ill. 2d at 545). In the context of an alleged sentencing error, " 'a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing.' " *Id.* As this court observed in *Cunningham*, defendant has the burden of persuasion on both prongs when arguing that plain error occurred. *Id.*; see *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 26        As our first step in the plain-error analysis, we must determine whether any error occurred at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19; *People v. Williams*, 2018 IL App (4th)

150759, ¶ 16. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31 (citing *People v. Lewis*, 234 Ill. 2d 32, 43 (2009)). If error did not occur, the principles of forfeiture apply. *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010).

¶ 27                                    1. *Did Any Error Occur?*

¶ 28        A trial court is given broad discretion in determining an appropriate sentence. *People v. Holland*, 2023 IL App (4th) 220384, ¶ 56. However, whether the trial court relied on improper factors in fashioning a defendant's sentence is a question of law, which we review *de novo*. *Brown*, 2023 IL App (4th) 220476, ¶ 43 (citing *Williams*, 2018 IL App (4th) 150759, ¶ 18). We note there is "a strong presumption that the trial court relied on proper legal reasoning in determining a sentence, and a court of review must consider the record as a whole, rather than focus on a few words or statements made by the trial court." *Id.* A defendant has the burden to affirmatively establish that his sentence was based on improper considerations. *Id.*

¶ 29        In this case, defendant asserts that the trial court improperly considered its own knowledge and feelings on gun violence in Peoria when imposing its sentence. In support, defendant points to certain remarks made by the court during the sentencing hearing, which we now address below.

¶ 30                         a. Impact of Gun Violence on Community

¶ 31        Defendant stated in allocution that he was "sorry for contributing to the ignorance and violence that has cursed our city of Peoria." The trial court, in apparent response, began its general sentencing remarks by stating, "It makes the Court sad to see these situations where guns are involved. It's having a terrible impact on our city." Here, the court briefly mentioned the impact of gun violence on the community in passing, but it focused directly on the issues particular to

defendant when assessing the sentence to be imposed. It seems clear that the court's remark carried little to no weight in determining defendant's sentence. Indeed, the court made no indication whatsoever that it was considering the need to curb gun violence in Peoria as an aggravating factor in imposing defendant's sentence. "An isolated remark made in passing, even though improper, does not necessarily require that defendant be resentenced." *People v. Reed*, 2018 IL App (1st) 160609, ¶ 55. We ascribe no significance to the trial court's "isolated remark made in passing" (*id.*), and we do not find that it constitutes error.

¶ 32                                    b. The Need for Deterrence

¶ 33        Defendant takes issue with the trial court's reference to the need to deter similar crimes. Specifically, during sentencing, the court said to defendant, "Imagine—you can imagine— *** being the person that's shot and it's got to be deterred." Similarly, after commenting on various mitigating factors, the court stated, "But there's no getting around you shot at somebody and that kind of behavior has got to be deterred." In *Cunningham*, we stated, "In exercising its broad sentencing discretion, a trial court 'may logically give reasonable consideration to the need for deterrence as a factor in the imposition of a sentence.' " *Cunningham*, 2018 IL App (4th) 150395, ¶ 27. Moreover, we noted that section 5-5-3.2(a)(7) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(7) (West 2012)) plainly states that deterrence of others "from committing the same crime" is a factor to be accorded weight in considering a term of imprisonment. *Cunningham*, 2018 IL App (4th) 150395, ¶ 37. For these reasons, in *Cunningham*, we held that the need for deterrence was an appropriate consideration for the court and found no clear or obvious error. *Id.* We reach the same conclusion here.

¶ 34                                    c. Adverse Effect on Everyone

¶ 35 Finally, defendant challenges the trial court's remark, "It's adversely affecting everyone." From the context, it appears that the court may well have been referring to the shooting's effect on both the victim and on defendant's family. We note that a good portion of the testimony of defendant's sister and part of his own statement in allocution focused on how the court's sentencing ruling might impact defendant's children. Certainly, others were impacted by this crime. Alternatively, the court may have again been referring to the need to deter gun crimes to avoid their adverse effects. As noted above, deterrence is a proper consideration in imposing a sentence. Regardless of the construction, we again find no error.

¶ 36                                    d. Totality of Court's Remarks

¶ 37 When reviewing this record as a whole, the trial court considered numerous factors in imposing its sentence. As it stated at the outset of its sentencing findings: "The Court has considered the [PSI], evidence, the arguments, the statement of allocution of the defendant, have considered all the statutory factors in aggravation and mitigation, the history and character of [defendant], and having due regard for the circumstances and the nature of the offenses." It further stated that it considered "the facts, ***, PSI, and [defendant's] behavior up until this incident." The PSI indicated that defendant had prior gun-related charges and since the 2019 shooting, he had further been charged with reckless homicide. The record further did not reveal any explanation as to why defendant fired multiple shots at the victim. There has been no showing that the court's brief statements, as suggested by defendant, were improper considerations in determining sentencing or constituted error.

¶ 38                                    2. *Within Range of Statutory Sentence*

¶ 39 As an additional point, we observe that the sentence imposed here was 10 years, 4 years *more* than the statutory minimum (which defendant sought), but 5 years *less* than the agreed

15-year cap (which was the term the State sought). Absent the agreed sentencing cap, defendant could have faced up to 30 years in prison. 720 ILCS 5/12-3.05(h) (West 2020) (a violation of subsection 12-3.05(e)(1) is a Class X felony); 730 ILCS 5/5-4.5-25(a) (West 2022) (imprisonment ranging from 6 to 30 years). Given the nature of the crime and the other factors contained in the record, we do not find the 10-year sentence to be indicative that the trial court considered any improper factors. Instead, the sentence was well within the statutory sentencing range based on defendant's particular facts and circumstances. See, *e.g.*, *Cunningham*, 2018 IL App (4th) 150395, ¶¶ 54-55.

¶ 40　　　　Having concluded that the trial court's statements were not errors, we have no need to assess the two prongs of the plain-error analysis. *Sykes*, 2012 IL App (4th) 111110, ¶ 31. Therefore, we conclude the issue has been forfeited.

¶ 41　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 43　　　　Affirmed.