NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 220945-U

NO. 4-22-0945

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 8, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| SETH T. KOBBEMAN, | ) | No. 21CF201 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Stanley B. Steines, |
| | ) | Judge Presiding. |

_____

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Turner and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court erred by considering defendant's four prior domestic battery
convictions, a factor inherent in the offense of which defendant was convicted, as
a factor in aggravation, thus requiring vacatur of defendant's sentence and remand
for a new sentencing hearing.

¶ 2     In February 2022, the trial court sentenced defendant, Seth T. Kobbeman, to five

years' imprisonment for domestic battery (720 ILCS 5/12-3.2(a) (West 2020)). He received a Class

2 felony sentence based on his four prior domestic battery convictions. See *id*. § 12-3.2(b). He did

not file a postsentencing motion.

¶ 3     Defendant filed an untimely notice of appeal. However, our supreme court entered

a supervisory order directing us to treat his appeal as properly perfected. In this appeal, he argues

the trial court erred in considering his four prior convictions of domestic battery, the number of

convictions necessary to elevate his offense to a Class 2 felony, as a statutory factor in aggravation.

He concedes he failed to preserve this claim for review but asks us to address it under the plain error doctrine. We vacate the sentence and remand for a new sentencing hearing.

¶ 4                                    I. BACKGROUND

¶ 5                                        A. The Trial

¶ 6        Following a jury trial, defendant was convicted of domestic battery, which was a Class 2 felony based on his four prior domestic battery convictions. While the sufficiency of the evidence is not at issue in this appeal, we provide a summary of the evidence necessary to understand the mitigating and aggravating factors discussed at sentencing.

¶ 7        Defendant had been in an on-again, off-again romantic relationship with Jeniffer H. Jeniffer moved out of defendant's home in February or March 2021, and the "definitive breakup" occurred in April 2021. However, Jeniffer retained keys to the house defendant rented.

¶ 8        Defendant repeatedly called Jeniffer on June 21, 2021, inviting her to come over to his house and discuss their relationship. She agreed because she had items at his home she wanted to collect, including an Internet modem she needed to return to the service provider. Between 7 and 8 p.m., Jeniffer went to defendant's house. Initially, they drank beer outside and had an amicable conversation. However, when Jeniffer requested her modem back, defendant left the house and locked the doors. Jeniffer used her key to go inside and collect some clothing she had left behind. However, she did not take the modem because she believed defendant would be angry if she disconnected the modem herself, so she waited for him to return to ask him to get it.

¶ 9        Defendant returned about an hour after he left. He was pleasant to Jeniffer until she again requested the return of the modem. He started yelling and pouring liquids, including his beer and jugs of water, onto her where she sat. He then kicked and broke his television. She stood up, but defendant slammed her into the floor, causing her to develop a lump on the left side of her

head. He punched her in the face, striking her right eye. He tried to pull her purse away from her, which caused an injury to Jeniffer's finger. He dragged her into the kitchen and kicked her legs. She lost hold of her purse, and he pushed her out of the house through a side door.

¶ 10        Defendant then called 911. For much of the time he was on the call, Jeniffer was yelling from outside the back door of the house. She asked defendant to return her purse and tried to get the attention of the 911 dispatcher. She then left through a back alley.

¶ 11        At about 1:30 a.m., Officer Zachery Lyerla of the Rock Falls Police Department responded to a dispatch based on defendant's 911 call. Lyerla spoke with defendant, who then led him through a backyard path and pointed out where Jeniffer had gone. Defendant let Lyerla proceed by himself when Lyerla told him to "hang tight." Lyerla encountered Jeniffer in the back alley.

¶ 12        Lyerla noticed Jeniffer's clothing was wet. She also had a large bump over an eye and a bruise under an eye. Jeniffer told Lyerla there had been "a domestic" between her and defendant, and she admitted she had been drinking. The officer took her back to defendant's home to get her purse. Lyerla and other officers were knocking at the doors to the house, but defendant did not come to either door.

¶ 13        Laura Bowers, a friend of defendant's to whom he sublet a room, testified she had made observations that suggested Jeniffer had tried to force her way into defendant's house while he tried to keep her out.

¶ 14        The jury found defendant guilty of domestic battery.

¶ 15                    B. Sentencing Hearing

¶ 16                    1. *The State's Evidence*

¶ 17    At the February 2022 sentencing hearing, the trial court admitted certifications of defendant's four prior domestic battery convictions. The State, over defendant's objection, "proffer[ed]" the details of defendant's arrest as they were presented in a police report. The facts of the arrest were also mentioned in the presentence investigation report (PSI). According to the State, on June 29, 2021, at approximately 8 p.m., the Rock Falls Police Department received a call from an employee of a bar informing the department of a fight outside the bar. When officers arrived at the bar, a bartender identified two combatants, one of whom was defendant. Both individuals were intoxicated and uncooperative. The officers arrested defendant on an outstanding warrant for the domestic battery of Jeniffer.

¶ 18    The State called Brandy Mallicoat, the author of the PSI and the Whiteside County probation officer who supervised domestic violence offenders' probation. She opined defendant was incapable of acknowledging what he did to Jeniffer was wrong.

¶ 19            2. *Defendant's Evidence*

¶ 20    Defendant called Laura Bowers and David Pike as character witnesses. Both described him as straightforward and having a strong work ethic. Pike drove defendant because defendant did not have a driver's license.

¶ 21            3. *The Victim Impact Statements*

¶ 22    The trial court heard victim impact statements from both Jenniffer and her mother, Judy H.

¶ 23            4. *The Arguments of Counsel*

¶ 24            a. The State's Argument

¶ 25    The State argued the PSI demonstrated defendant was incapable of following the terms of probation. He was sentenced to probation for his first domestic battery conviction

involving his brother in 1995 and violated his probation in that case. Subsequently, he was convicted of driving under the influence (DUI) in 1996 and again violated the terms of his probation. He was convicted of domestic batteries of his then-wife in 2002 and twice in 2007. In each case, defendant violated his probation, and one of those violations included the incident that resulted in the second 2007 conviction. Additionally, he was convicted of violation of an order of protection in 2012. The prosecutor stated, "That's not to mention his other criminal convictions listed in the PSI, which includes three DUIs, a resisting a peace officer, a misdemeanor battery, *** [and] three disorderly conducts ***." Further, defendant failed to recognize the seriousness of his alcoholism and showed no interest in addressing his posttraumatic stress disorder. Next, the State argued none of the statutory factors in mitigation were applicable and several statutory factors in aggravation had particular relevance.

¶ 26          The State asked the trial court to consider three factors in aggravation. The first factor was whether the offense caused or threatened serious harm, specifically pointing to Jeniffer's physical and psychological injuries. Next, the State noted defendant's history of past delinquencies, including the four prior domestic batteries and the other offenses listed in the PSI. Finally, the State argued a lengthy sentence was necessary to deter others from committing the same crime:

> "The [State's recommended] sentence [of seven years' imprisonment] is necessary to deter others from committing the same crime. *** The legislature has established they don't want anyone battering anyone. They pay particular attention, however, to battering a family or household member by enacting its own statute with sometimes harsher penalties. This individual has *** been found guilty or pled guilty of this crime five times now. *** His sentence needs to send a message to

the public that this will not be tolerated. It will not be tolerated once, it will not [be] tolerated twice and most certainly not five times."

¶ 27                              b. Defense Counsel's Argument

¶ 28        Defense counsel asked the trial court to consider that defendant had completed several sentences of probation satisfactorily. Counsel further argued defendant had shown his respect for the law by relying on a friend to drive him to work. Further, defendant was aware he abused alcohol and was seeking treatment at the jail.

¶ 29                              5. *Defendant's Statement in Allocution*

¶ 30        Defendant spent most of his statement in allocution talking about Jeniffer's flaws: she used drugs, she lied, she cheated on him, and she would disappear. He explained, "I broke up with her, I moved her out and I didn't want to, it wasn't out of fun, it was to teach her a lesson and she never learned." Moreover, "I'm a Christian. I go to church. Me and her have went [*sic*] to church, but she only wanted—she didn't want to go after the second time and I didn't know why." He further stated, "I take responsibility for what's happened with us, yes. I was the 911 caller in this case that tried to deescalate the situation and I understand I was—we were both wrong."

¶ 31                              6. *The Sentence*

¶ 32        The trial court stated it had considered the evidence at trial and sentencing, the PSI, the victim impact statements, and defendant's statement in allocution. It first addressed the three statutory factors in aggravation (730 ILCS 5/5-5-3.2(a) (West 2022)) it deemed relevant.

¶ 33        First, the trial court declined to consider in aggravation that "the defendant's conduct caused or threatened serious harm." *Id.* § 5-5-3.2(a)(1). It stated:

> "I do not consider this as an aggravating factor, because I believe it is an element
> of the offense. Having said that, that is not to say that I cannot consider the nature

of the offense itself in determining the appropriate sentence, but I cannot consider it as an aggravating factor."

¶ 34        Second, the trial court recognized defendant had a significant criminal history. See *id.* § 5-5-3.2(a)(3). However, it agreed with defendant that the last two times he was placed on probation, he completed it successfully.

¶ 35        Third, the trial court deemed a sentence that would deter others was important. See *id.* § 5-5-3.2(a)(7). The court was particularly concerned with deterring the commission of multiple domestic battery offenses by a single offender:

> "[W]hat I mean by [a significant criminal history] is—I'm going on to the next aggravating factor, which is a sentence is necessary to deter others from committing the same crime. *** [W]e know that his criminal history is such that this is his fifth domestic battery. *** [Deterrence is] the general purpose of our criminal justice system, but it is considered an aggravating factor and I can understand, particularly for instances like this when we are talking about a societal problem of domestic violence ***. If there's anything *** we should feel safe in our homes and we should all feel safe in our relationships. Domestic violence cannot and should not be tolerated at any level. So when we are talking about somebody who over their lifetime has committed their fifth domestic battery, a sentence certainly is necessary to deter others from committing five domestic batteries is really what it says."

¶ 36        Thereafter, the trial court explained why none of the statutory factors in mitigation (*id.* § 5-5-3.1(a)) were applicable. The court noted that, because this was a fifth domestic battery and defendant had a history of related conduct, such as violating an order of protection, it could not say the conduct was the result of circumstances unlikely to recur. *Id.* § 5-5-3.1(a)(8).

Additionally, the court addressed the effect of defendant's alcohol abuse on his culpability. The court noted the evidence, although not entirely consistent, tended to show defendant failed to recognize the negative effect alcohol had on him. In making this determination, the court considered the police report of defendant's arrest, which noted he was intoxicated and had been involved in an altercation near a bar. Finally, the court acknowledged defendant had undergone an initial risk assessment and was deemed to be high risk.

¶ 37    The trial court noted the applicable sentencing range was three to seven years and the offense was probationable. The court found a sentence of "probation or conditional discharge would deprecate the seriousness of his conduct and would be inconsistent with the ends of justice" and sentenced defendant to five years' imprisonment.

¶ 38    This appeal follows.

¶ 39    II. ANALYSIS

¶ 40    On appeal, defendant argues that, as a matter of second-prong plain error, (1) the trial court improperly used his four prior domestic battery convictions both as a factor in aggravation and to raise the class of his offense to a Class 2 felony, subjecting him to an improper double enhancement and (2) the court improperly considered unreliable information—the police report describing his arrest—in aggravation. Alternatively, he argues his trial counsel was ineffective for failing to raise both matters. We note defendant has withdrawn his claim the court improperly permitted the State to present a second victim impact statement.

¶ 41    In response, the State contends the trial court did not err in considering defendant's prior domestic battery convictions as factors in aggravation. It notes our supreme court has held that "although sentencing courts cannot consider an element inherent in the offense as an aggravating factor, that rule [should] not be rigidly applied to restrict the function of a sentencing

judge by forcing him or her to ignore factors relevant to the imposition of sentence." The State, relying upon *People v. Thomas*, 171 Ill. 2d 207, 224-25, 664 N.E.2d 76, 85-86 (1996), asserts "Defendant would require the judge to ignore the fact that 'this is his fifth domestic battery' when determining whether a 'sentence is necessary to deter others from committing the same crime.' "

¶ 42 Moreover, the State argues, the trial court did not err "[b]ecause being intoxicated was not criminal conduct, [and] defendant has not shown a clear or obvious error under [the applicable case law]" that the information about his arrest derived from the police report was improperly considered.

¶ 43 A. The Trial Court's Use of Defendant's Prior Convictions

¶ 44 As a rule, "[t]o preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial [or postjudgment] motion." *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E. 3d 675. Failure to do either results in forfeiture of the claim. *Id.* Defendant concedes he forfeited the issue of the trial court's consideration of his four domestic battery convictions and the statements about his arrest by failing to raise it in a postsentencing motion, but he contends we can review his claim under the plain error rule. See Ill. S. Ct. R. 615(a) (eff. Jan 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 45 1. *The Applicable Law*

¶ 46 a. The Plain Error Rule

¶ 47 Our supreme court has stated:

"[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a *clear or obvious* error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of

justice against the defendant, regardless of the seriousness of the error, or (2) when a *clear or obvious* error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Emphases added.) *People v. Moon*, 2022 IL 125959, ¶ 20, 215 N.E. 3d 58.

¶ 48　　　　Illinois appellate courts generally review instances of improper double enhancement as second-prong plain error. *People v. Young*, 2022 IL App (3d) 190015, ¶ 23, 205 N.E.3d 840 (collecting cases). A sentencing decision must be reversed when the trial court has considered an improper factor "unless it is clear from the record that the improper factor was so insignificant that its consideration did not result in a greater sentence." *Id.* (citing *People v. Martin*, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886 (1988)). In other words, when the trial court has considered an improper factor, a reviewing court presumes that the result affected the fairness of the sentencing hearing unless the record positively rebuts that presumption.

¶ 49　　　　　　　　　　b. The Rule Against Double Enhancements

¶ 50　　　　The rule against double enhancements is, at its core, a version of the presumption that the legislature does not intend unjust or absurd results. See, *e.g.*, *People v. Taylor*, 2023 IL 128316, ¶ 45, 220 N.E.3d 1034 ("[W]e presume that, in enacting [a] statute, the legislature did not intend to produce absurd, inconvenient, or unjust results."). We recently explained the logic behind the rule in *People v. Brown*, 2023 IL App (4th) 220476, ¶ 44:

　　　　"A factor that is implicit in the offense for which the defendant has been convicted generally cannot be used as an aggravating factor in sentencing for that offense. [Citation.] In other words, a single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise

have been imposed. [Citation.] The prohibition of such a 'double enhancement' is a rule of statutory construction based on the assumption that, 'in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense.' " (quoting *People v. Phelps*, 211 Ill. 2d 1, 12, 809 N.E.2d 1214, 1220 (2004)).

¶ 51     Admittedly, the prohibition does not bar the trial court from considering " ' "the nature and circumstances of the offense" ' " (*People v. Thomas*, 171 Ill. 2d 207, 227, 664 N.E.2d 76, 87 (1996) (quoting *People v. Saldivar*, 113 Ill. 2d 256, 268, 497 N.E.2d 1138, 1143 (1986), quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668 (1981))) or " 'the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment' " (*id.* (quoting *Saldivar*, 113 Ill. 2d at 268)). Moreover, "factors inherent in the offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case." *Brown*, 2023 IL App (4th) 220476, ¶ 52 (quoting *People v. McGath*, 2017 IL App (4th) 150608, ¶ 73, 83 N.E.3d 671).

¶ 52     We have held that whether the trial court relied on improper factors in deciding a defendant's sentence is a question of law, and that our review is thus *de novo*. *Id.* ¶ 43 (citing *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590). In *Williams*, we relied on the Second District case of *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459, which in turn relied on *People v. Chaney*, 379 Ill. App. 3d 524, 527, 884 N.E.2d 783, 786 (2008). *Williams*, 2018 IL App (4th) 150759, ¶ 18. We note *Chaney* did not cite further authority. However, our supreme court in *Phelps* stated: "The double-enhancement rule is one of statutory construction [citation] and the standard of review therefore is *de novo* [citation]." *Phelps*, 211 Ill. 2d at 12. *Phelps* is binding on us where the "improper factor" at issue is double enhancement.

¶ 53        In this case, the trial court, when addressing the aggravating factor of deterrence, strictly limited its discussion to defendant's five domestic battery convictions.

"I'm going on to the next aggravating factor, which is a sentence is necessary to deter others from committing the same crime. *** [W]e know that his criminal history is such that this is his fifth domestic battery. *** [Deterrence is] the general purpose of our criminal justice system, but it is considered an aggravating factor and I can understand, particularly for instances like this when we are talking about a societal problem of domestic violence ***. If there's anything *** we should feel safe in our homes and we should all feel safe in our relationships. Domestic violence cannot and should not be tolerated at any level. So when we are talking about somebody who over their lifetime has committed their fifth domestic battery, a sentence certainly is necessary to deter others from committing five domestic batteries is really what it says."

The court could not have been clearer that it was moving on from the criminal history factor to the deterrence factor. The court then focused solely on the fact this was defendant's fifth domestic battery conviction.

¶ 54        Four prior domestic battery convictions is the minimum number required to raise a subsequent domestic battery conviction to a Class 2 felony: "Domestic battery is a Class 2 felony if the defendant had 4 or more prior convictions under this Code for domestic battery (Section 12-3.2), or 4 or more prior convictions under the law of another jurisdiction for any offense which is substantially similar." 720 ILCS 5/12-3.2(b) (West 2020). Thus, although a history of *more than four* prior domestic battery convictions could, without any further context, be treated as aggravating, *exactly four* could be treated as aggravating as they related to the nature and

circumstances of the offense or " 'defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment.' " *Thomas*, 171 Ill. 2d at 227 (quoting *Saldivar*, 113 Ill. 2d at 268).

¶ 55        Moreover, this was more than simply repeating a defendant's criminal history. In this case, defendant's five domestic battery convictions were the only reason provided by the trial court as a basis the sentence was necessary to *deter others*. Thus, consistent with the rest of its reasoning, neither defendant's character nor the specifics of the offense were a part of the court's conclusion it would consider deterrence as a factor in aggravation. The court's use of defendant's four prior domestic battery convictions was an improper double enhancement.

¶ 56        Having determined the trial court's consideration of defendant's prior convictions was an improper double enhancement, we must now consider whether such consideration influenced the sentence. As we noted, Illinois courts will generally review instances of improper double enhancement as second-prong plain error. See *Young*, 2022 IL App (3d) 190015, ¶ 23. "For errors that fall under the purview of the second prong of the plain error rule, prejudice is presumed." *People v. Jackson*, 2022 IL 127256, ¶ 24, 211 N.E.3d 414, 425. Or, as stated in *Young*, a sentencing decision must be reversed when the trial court has considered an improper factor "unless it is clear from the record that the improper factor was so insignificant that its consideration did not result in a greater sentence." *Young*, 2022 IL App (3d) 190015, ¶ 23. We need not decide whether *Jackson* and *Young* set forth identical standards because we cannot conclude from the record before us, under either standard, that the court's consideration of the improper factor did not impact defendant's sentence. Here, the court deemed only three aggravating factors to be important enough to address specifically: (1) defendant's conduct caused or threatened serious harm; (2) defendant had a significant criminal history; and (3) the sentence was necessary to deter

others from committing the same crime. The court concluded the first of these factors was inapplicable. It thus focused entirely on criminal history and deterrence. Given that focus, we cannot say the court's improper consideration of defendant's prior domestic battery convictions was insignificant. Although we cannot conclude the error resulted in an increased sentence, we also cannot conclude it did not. We thus must vacate the sentence and remand the matter for a new sentencing hearing.

¶ 57                                    B. The Police Report

¶ 58        Defendant also claims the trial court erred in considering as aggravating the State's description of a police report that described him as intoxicated and uncooperative when arrested. He contends this evidence, because the State presented it by proffer, violated the principle that evidence presented at a sentencing hearing must be "relevant and reliable." *People Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992). However, he has neither argued nor cited authority for the proposition the court's supposed violation of this principle may be addressed under either prong of the plain error rule and, thus, he forfeited the claim. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant support his or her arguments with citation to the authorities on which the argument relies; further, "[p]oints not argued are forfeited."

¶ 59                          C. Ineffective Assistance of Counsel

¶ 60        Defendant also argues defense counsel's failure to file a postsentencing motion to preserve the police report claim and his double enhancement claim constituted ineffective assistance of counsel. Defendant presented his claim of ineffective assistance of counsel as an alternative basis for vacating his sentence. As we have vacated his sentence based on his double enhancement claim, we need not address his ineffective assistance claim.

¶ 61                                    III. CONCLUSION

¶ 62        For the reasons stated, we vacate defendant's sentence and remand the matter for a new sentencing hearing in conformity with this order.

¶ 63        Sentence vacated; cause remanded.